[Crim. No. 16054. In Bank. Mar. 20, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL JOSEPH LAWLER, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Francis G. Knipe for Defendant and Respondent.

OPINION

**TOBRINER, J.**—The People appeal (Pen. Code, § 1238, subd. (7)) from an order of the Superior Court of Los Angeles County dismissing an information (Pen. Code, § 1385) following the granting of defendant's

motion for suppression of evidence under section 1538.5 of the Penal Code. The information charged defendant Michael Joseph Lawler with possession of marijuana for sale (Health & Saf. Code, § 11530.5).

As we shall point out, we have concluded that in the absence of sufficient probable cause to believe defendant was armed, the officer engaged in an unlawful pat-down of defendant's sleeping bag. We have further concluded that this illegal search was inextricably involved with an immediately subsequent search of the interior of the sleeping bag; the trial court properly held inadmissible the evidence thus secured.

On a midsummer afternoon, Officer Gott observed defendant Michael Joseph Lawler, age 18, standing in a roadway near an intersection, knocking on the windows of passing cars that had temporarily stopped there. When the officer parked his patrol car in order to investigate, defendant rejoined two companions, a girl about 20 years old and a boy, age 15, who were waiting at the curb. Picking up the rolled-up sleeping bags that they had with them, the trio began walking along the sidewalk. At that point Officer Gott approached them and detained them for questioning.

Explaining that they were hitchhiking, the three young persons asked if hitchhiking was legal. Seeking further identification, the officer questioned them as to what they were doing, and why defendant had been in the street. They informed him they were going to Big Sur, showed him a cardboard sign they were carrying which had "Big Sur" written on it, and explained that defendant was trying to obtain a ride for them. They also told the officer that they were somewhat lost and asked for a map.

Officer Gott testified that because defendant seemed nervous at this point, and kept "grabbing" at his sleeping bag as if he wanted to leave, a "routine pat-down search for weapons was in order." He testified that he felt a lump in the bag which, to him, seemed like "some type of automatic weapon." The officer asked defendant if he would show him what was in the bag. Defendant unrolled the sleeping bag; the "automatic weapon" turned out to be a combination fork, knife, spoon utensil commonly used by campers. There also fell out several plastic bags of marijuana.

The record indicates that the officer undertook the pat-down search of the sleeping bag prior to any search of defendant himself. To the question "Did you determine at any point to pat down the defendant?" the officer answered "Yes. Due to the circumstances involved I felt a routine pat-down search for weapons was in order. . . . *I went to view the sleeping bag,* and I felt a hard lump in it, and this lump felt to be some type of an automatic weapon, a hard pistol, a weapon of some form." (Italics added.) To

the further question "Did you ask the defendant if he would show the contents of the bag?" the officer answered "Yes. I did. After the routine pat-down search, I asked the defendant if he would voluntarily show me what was in the bag. . . ." The reference to the "pat-down search" here must allude to the search of the bag. On cross-examination, the officer confirmed the fact that the search of the bag preceded any search of the defendant. To the question "You felt the hard object in the sleeping bag and *after that* you made the pat-down search of the accused?" the officer answered "Yes." (Italics added.)

Section 1538.5, subdivision (i), expressly endows the defendant with the right to obtain a determination by the superior court as to "the validity of a search or seizure de novo on the basis of the evidence." Consequently we do not sit to review the finding of the magistrate upholding the seizure of evidence in the present case. That finding has been overturned by the de novo determination of the superior court. Our task, instead, is to review the superior court's ruling under appropriate standards of review.

■ " 'A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact.*' (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].)" (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. ■ The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ.[1] Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.

## 1. *The pat-down of the sleeping bag constitutes an illegal search.*

■ The Attorney General contends that "patting down the outside of the bag was proper" because defendant was engaged in a traffic violation, and, in any event, because unusual circumstances justified a pat-down.

---

[1]In the case at bar, for example, the amount of contraband seized suggests that the defendant was not a large-scale trafficker, and the trial court's ruling was based on the application of settled legal principles.

The United States Supreme Court in *Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868], held that a police officer could undertake a pat-down search[2] only "where [the officer] has reason to believe that he is dealing with *an armed and dangerous individual*. . . . [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Italics added.) The court proceeded further to say that "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inference which he is entitled to draw from the facts . . ." (*Id.*) In *People* v. *Superior Court* [*Simon*] (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205], we outlined the critical question as: ". . . is this the kind of confrontation in which the officer can reasonably believe in the possibility that a weapon may be used against him?" (7 Cal.3d at p. 204.)

In the first instance, we find nothing in the record to show that when the officer engaged in the pat-down of the sleeping bag, he believed that he was dealing with an "armed and dangerous individual." If indeed the officer were fearful that defendant was armed, we find no explanation of the reason the officer did not pat down the defendant rather than the sleeping bag, which apparently had been left upon the sidewalk until defendant "grabbed it and attempted to leave." The 18-year-old lost hitchhiker with his young companions, dragging their sleeping bags, hardly paints the picture of an "armed and dangerous individual."

Turning to the contention of the Attorney General that defendant's violation of hitchhiking traffic regulations justified the pat-down, we do not believe that such a violation per se afforded probable cause for the search. Indeed, we held in *Simon* that no authority to pat down flowed from a mere traffic violation; *Simon* in large part reiterates the reasoning of *People* v. *Superior Court* [*Kiefer*] (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], accepting its conclusion that "[j]ust as the arresting officer in an ordinary traffic violation case cannot reasonably expect to find contraband in the offender's vehicle, so also he cannot expect to find weapons." (3 Cal.3d at p. 829.)

Although *Simon* and *Kiefer* dealt with detentions for violation of the motorist sections of the Vehicle Code, the principles of these cases apply with equal force to a detention involving a violation of a pedestrian section

---

[2]This pat-down must ". . . be confined in scope to an intrusion reasonably designed to discover . . . hidden instruments for the assault of the police officer." (*Terry* v. *Ohio* (1968), *supra,* 392 U.S. 1, 29 [20 L.Ed.2d 889, 911].)

of that code. In the typical pedestrian traffic violation case, the circumstances justifying a detention[3] do not furnish probable cause to pat down the pedestrian or his personal effects for weapons; obviously these violations do not normally involve the use of weapons.

' As we have stated, the Attorney General urges as a second argument that the officer, in detaining defendant for hitchhiking in a roadway (Veh. Code, § 21957), faced unusual conditions that rendered the pat-down for weapons reasonable. Defendant "seemed apprehensive"; he "kept grabbing" at his sleeping bag. Yet the officer himself explained the "grabbing" of the bag as part of defendant's desire to be on his way. Defendant's nervousness could understandably result from extended police questioning because of a "traffic violation."[4]

We do not find defendant's actions sufficiently unusual or suspicious to warrant a pat-down search for weapons. Many individuals who are accosted and queried by a police officer become both upset and desirous of the earliest possible termination of an uncomfortable situation. In the instant case, the youths had told the officer of their plans to travel to Big Sur; it was late afternoon; they were unsure as to the legality of hitchhiking. The defendant quite adequately explained the presence of the sleeping bag, stating that he was hitchhiking to the Big Sur camping area; the cardboard sign supported his assertion. Surely the individual's picking up of his gear before leaving did not constitute an unusual or suspicious circumstance.[5] (Cf. *Gallik* v. *Superior Court* (1971) 5 Cal.3d 855 [97 Cal.Rptr. 693, 489 P.2d 573]; *People* v. *Superior Court* [*Kiefer*] (1970) 3 Cal.3d 807 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *Stern* v. *Superior Court* (1971) 18 Cal.App.3d 26 [95 Cal.Rptr. 541]; *People* v. *Hana* (1970) 7 Cal.App.3d 664 [86 Cal.Rptr. 721]; *People* v. *Zabala* (1963) 217 Cal. App.2d 550 [31 Cal.Rptr. 712].)

The officer's testimony that he felt a "routine" search for weapons was in order apparently betrays the presence of a police practice in dealing with

---

[3]E.g., failure to yield the right of way to a vehicle when one is on a roadway at some point other than within a crosswalk (Veh. Code, § 21954); jay walking between adjacent intersections controlled by traffic control signals or police officers (Veh. Code, § 21955); or hitchhiking while standing in a roadway (Veh. Code, § 21957).

[4]Officer Gott testified that after questioning defendant and his companions at some length "[t]hey seemed, especially Lawler seemed very nervous when I talked to him. He seemed apprehensive, like he wanted to get going. He kept grabbing his sleeping bag."

[5]The officer also testified that the trio picked up their gear and attempted to leave when he first approached them; he did not, however, describe this grabbing of gear as unusual.

hitchhikers that is precisely the type of Fourth Amendment violation condemned by this court in *Kiefer* in the case of motorists.[6]

We conclude that substantial evidence supports the superior court's determination that the pat-down search of the sleeping bag, conducted in the absence of sufficient unusual circumstances to justify a search for weapons, constitutes an illegal search.[7]

2. *The illegal pat-down search is inextricably bound up with the immediately subsequent search of the interior of the sleeping bag, and evidence thus secured is inadmissible.*　\

██ The Attorney General contends that defendant "voluntarily opened the sleeping bag" and that this act of consent renders admissible the evidence discovered by the search of that bag. ██ "When the People seek to justify a search on the ground that consent was given, they have the burden of proving . . . that the consent was lawful, was not a mere submission to authority, and was not inextricably bound up with unlawful conduct." (*People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921].) The record before us supports the superior court's conclusion that the prosecution failed to sustain this burden.

In *People* v. *Haven* (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], the defendant, confronted with five officers who had already entered his house illegally, consented to their search of the premises. We held the consent invalid. ██ Noting that language in several cases suggested that a search pursuant to consent was valid even though the consent was given immediately after an unlawful entry or arrest, we expressly disapproved such language and established the principle that "[a] search and seizure made pursuant to consent secured immediately following an illegal entry or arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (59 Cal.2d at p. 719.)

In *People* v. *Johnson* (1968) 68 Cal.2d 629 [68 Cal.Rptr. 441, 440 P.2d 921], police officers illegally searched the defendant in the hallway of a

---

[6]"To allow the police to routinely search for weapons in all [detentions for a traffic violation] would likewise constitute an 'intolerable and unreasonable' intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile." (*People* v. *Superior Court* [*Kiefer*] (1970) 3 Cal.3d 807, 829 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

[7]Because we sustain the superior court's finding of insufficient probable cause to warrant the pat-down, we need not address defendant's contentions that the detention was unduly long and that a pat-down of the sleeping bag was ouside the permissible scope of searches authorized in *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].

hotel, then secured his consent to search defendant's room. We held the consent ineffective to justify the search, stating that "we are satisfied that a search or entry made pursuant to consent immediately following an illegal search, involving an improper assertion of authority, is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (68 Cal.2d at p. 632.) We reaffirmed this principle in two recent decisions, *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 155 [98 Cal.Rptr. 649, 491 P.2d 1], and *Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 314, fn. 3 [102 Cal.Rptr. 161, 499 P.2d 505].

In the present case the officer's request and defendant's assent immediately followed the illegal pat-down search; neither any time nor event intervened. We must concur with the superior court and conclude that the consent and the prior illegal search are inextricably joined; that the consent, being itself the fruit of an illegal assertion of authority, cannot justify a further illegal search.

The Attorney General cites *Mann* v. *Superior Court* (1970) 3 Cal.3d 1 [88 Cal.Rptr. 380, 472 P.2d 468], to support the proposition that even assuming the illegality of the pat-down, it does not taint the evidence secured by a subsequent search pursuant to defendant's consent. In *Mann* we ruled that the test to determine the admissibility of evidence secured after prior police illegalities turned upon whether that evidence had been obtained by an exploitation of the primary illegality or instead ". . . by means sufficiently distinguishable to be purged of the primary taint." (3 Cal.3d at p. 8, quoting *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].) We then stated in *Mann* that "The defendant's consent *may* constitute such a sufficiently distinguishable means *if* it is not induced by compulsion, intimidation, oppressive circumstances, or other similar factors inherent in the situation which make that consent less than an act of the free will." (*Id.*; italics added.) This explicit proviso distinguished *Mann* from the instant case.

In *Mann* the police officers observed the defendant through a dining room window, knocked on the door, and the door was freely opened to them. We specifically noted that ". . . the only event which induced consent to the officers' entry was the sound of knocking at the door. No words of intimidation or assertion of superior authority accompanied that sound, which might have made consent less than an independent act." (*Id.*) In the instant case, a uniformed officer detained defendant, questioned him, illegally searched his sleeping bag by patting it down, and immediately thereafter asked him to open his sleeping bag. This "request" followed on the heels of an illegal search involving an improper assertion of police

authority and bore the markings of a demand rather than of a mere inquiry. On these facts, the trial court correctly found that *Mann* v. *Superior Court* was a distinguishable decision and that, in the case at hand, defendant's submission to police authority did not validate the warrantless search of the sleeping bag.

The judgment of the superior court is affirmed.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Wood, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.