[Crim. No. 21842. June 15, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK H. NORTH, Defendant and Appellant.

510

COUNSEL

Sheldon Portman, Public Defender, Michael A. Kresser and Kevin P. Morrison, Deputy Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and John W. Messer, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

RICHARDSON, J.—Defendant Mark H. North pled guilty to second degree burglary (Pen. Code, §§ 459, 460; all further statutory references are to that code) following the trial court's denial of his motion to suppress evidence (§ 1538.5) which had been discovered by the burglary victim in defendant's automobile. In affirming the conviction, we will examine the propriety of the victim's actions, and his status as a possible police agent.

During the early evening hours of September 23, 1978, Pamela Turner, the daughter of Robert Turner, returned to her parents' home in Santa Clara after being away for the weekend. She noticed that the yard sidegate and the backdoor of the house were open. When Robert returned he discovered that several bottles of liquor, some coins, a quart

jar of nickels, a cigar box filled with pennies, and a pocket watch were missing. He called the police who dusted for fingerprints and made a report. After the police departed, the Turners discussed the robbery. Pamela, who had previously dated defendant and knew that he had recently returned to the area and was residing at his sister's home, suggested to her father that defendant was a possible suspect.

Robert and Pamela drove to the residence of defendant's sister where Pamela identified defendant's car, which was parked in the open parking lot next to the apartment where the sister lived. Robert looked in the car, but his flashlight's beam was too dim to see the interior and he became nervous because lights were on in the residence near the parked car.

The Turners then went to the police station where they met Officer Dixon who had earlier responded to the call at their home. He agreed to return to the car with them, but told them that he could not enter the car without a search warrant although he could examine the interior of the car from the outside to see whether any of the stolen articles were in plain view.

Officer Dixon parked his police car some distance from defendant's vehicle and walked to defendant's car with the Turners. Using the officer's flashlight, the Turners and Officer Dixon could see lying on the rear floorboard two bottles of liquor, one identifiable as a bottle of Wild Turkey whiskey, similar to a bottle that had been removed from Robert's home. The officer stated that the presence of the liquor bottles provided an insufficient basis upon which to enter the car. As the three continued to survey the car's interior, Pamela mentioned that because of defendant's criminal record, she would not be surprised if the car had been stolen. Officer Dixon thereupon concluded that he would "run a check" on the car to ascertain its ownership. He handed the flashlight to Robert, saying "here," and turned and walked to his patrol car 60 to 70 feet away. His vehicle was parked facing away from the suspect automobile, and he sat in the front seat to place a radio call concerning the vehicle's registration. As he was receiving a response to his inquiry, Robert approached and informed him that he had entered the car and discovered his property. They returned to the car where, because Robert had folded a blanket back, the stolen items were fully visible from outside of the vehicle.

At his section 1538.5 hearing, defendant argued that Officer Dixon tacitly encouraged and approved Turner's entry into the car and that

the latter's search of the car's contents was part of an improper "joint operation" by a private citizen and the police. While both Robert and Officer Dixon denied that transfer of the flashlight had been intended as an authorization by the officer to Robert to enter the vehicle, Pamela apparently did so interpret it because the officer walked away from the car. The trial court denied the suppression motion after stressing that Robert indicated "that he did not take the giving of the flashlight as some sort of tacit approval to search the car. He states he would have searched the car in any event whether the officer was present or not, having discovered that the Wild Turkey was there." This appeal followed.

Defendant generalizes that evidence must be suppressed whenever it is obtained by a private citizen who is involved in a joint operation with the police, or when the evidence is obtained by a citizen's search with the police standing idly by. Defendant contends the search before us was invalid under either circumstance. We disagree.

In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], we expressed the standard to be applied in appellate review of a section 1538.5 hearing: "In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and *the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.* The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. ... Of course, if ... review is ... sought, it becomes the ultimate responsibility of the appellate court to measure the facts, *as found by the trier*, against the constitutional standard of reasonableness." (Italics added.) It follows that section 1538.5 review encompasses a two-step process. We must first determine whether the trial court's findings of fact, implicit or explicit, are supported by substantial evidence. We must then decide whether, in reaching its decision, the trial court properly applied constitutional standards to those facts.

The findings before us both implicitly and explicitly reject defendant's contention that there was a tacit agreement between Officer Dixon and Robert under which the officer would absent himself in order to permit Turner to search the vehicle. There was substantial contrary evidence supporting the trial court's determination: the officer

expressly stated to Robert that he (the officer) could not enter the car; he did not advise Robert that he (Robert) could enter the car or request him to do so; the officer's return to his own vehicle was a perfectly reasonable response to Pamela's remark that the car could have been stolen, and was not an obvious subterfuge; the officer was fully aware that Robert had previously avoided entering the car in Dixon's absence; and there was no indication that the flashlight was necessary for the entry because, as the officer testified, it could be assumed that the interior car light would illumine the inside of the car if and when the unlocked car door was opened. Although a contrary conclusion might have been reached, the trial court's findings were amply supported by evidence and clearly rejected Pamela's interpretation of the interaction between Dixon and Robert. We decline to review the facts de novo.

Our conclusion that the motion to suppress was properly denied is fully consistent with our previous holdings. Historically, courts have consistently held that the Fourth Amendment's prohibition against unreasonable search and seizure does not apply to searches by private citizens. (*Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100 [73 Cal.Rptr. 575, 447 P.2d 967].) However, certain searches by private individuals, when performed in conjunction with, or cloaked in the authority of, the state, have been considered sufficiently "under color" of law to require application of Fourth Amendment standards. A substantial line of our own cases has described the standards by which to measure the propriety of a particular search by a private citizen.

In *Stapleton*, special credit card agents accompanied the police who went to defendant's home for the purpose of arresting him and searching his residence. The agents participated in the search of the home and a car finding incriminating evidence. We concluded in *Stapleton* that "The search of petitioner's car was clearly part of a joint operation by police and the credit card agents aimed at arresting petitioner and obtaining evidence against him. This official participation in the planning and implementation of the overall operation is sufficient without more to taint with state action the subsequent acts of such credit card agents." (70 Cal.2d at p. 100, fn. omitted.) We further noted that "Contrary to the assumption of the respondent court, the police need not have requested or directed the search in order to be guilty of 'standing idly by'; *knowledge* of the illegal search *coupled* with a failure to protect the petitioner's rights against such a search suffices." (*Id.*, at p. 103, italics added; cf. *Lustig* v. *United States* (1949) 338 U.S. 74, 78-79 [93 L.Ed. 1819, 1823, 69 S.Ct. 1372] [although federal officer

did not initiate or originally join in search by state officers, his subsequent participation in the search before it was concluded rendered the evidence seized by him inadmissible].)

Thereafter, in *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097], we approved a search by an air freight agent who opened cardboard cartons which had been delivered for shipment. After discovering what appeared to be marijuana, the agent called the police. We were unable to detect any prohibited "joint operation" whereby an agent had "participated in planning and implementing" a scheme with law enforcement officials to obtain evidence. We observed that "An alternative ground of our holding in *Stapleton* was that in appropriate circumstances a private citizen may also be deemed to act as an agent of the police when the latter merely 'stand silently by,' i.e., when they *knowingly* permit the citizen to conduct an illegal search for their benefit and make no effort to protect the rights of the person being searched. ([*Stapleton* v. *Superior Court, supra*] 70 Cal.2d at pp. 102-103.)" (7 Cal.3d at p. 912, italics added.) We further noted that "This rule forestalls belated police claims that they did not actually 'direct' or 'request' their lay associate to undertake the illegal search, and thereby prevents them from doing indirectly—by silent but unmistakable approval—what they cannot constitutionally do directly." (*Ibid.*)

Relying on *Stapleton* and *McKinnon* defendant essentially contends that when a "joint operation" exists between a private citizen and the police there is no need to establish that the private citizen's action was approved or known or directed by the police in order to invalidate the search and render inadmissible the evidence. Defendant misinterprets our holdings in those cases. In *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628 [114 Cal.Rptr. 114, 522 P.2d 674], we more recently reaffirmed the directly controlling principle: "The exclusionary rule will . . . be applied if the private citizen acted as an agent of the police or participated in a joint operation with law enforcement authorities *who either requested the illegal search or knowingly allowed it to take place* without protecting the third party's rights." (11 Cal.3d at p. 633, fn. 2, italics added.) The alternative tests described in *Stapleton* and *McKinnon* require exclusion of the evidence when in a joint operation the police either *direct* or *request* the citizen to act *or knowingly stand by* while illegal action occurs. (Compare *Tucker* v. *Superior Court* (1978) 84 Cal.App.3d 43 [148 Cal.Rptr. 167] [officer requested private citizen to get suspect's jacket from his locker]; *Moody* v. *United States*

(D.C. 1960) 163 A.2d 337, 339-340 [evidence inadmissible where police officer who accompanied victim to defendant's apartment neither directed him to enter nor deterred him from doing so, but rather "stood silently by" while the victim entered through open door and retrieved his property].)

Citizen cooperation with the police in a criminal investigation, standing alone, does not invoke the exclusionary rule. In *Dyas*, we affirmed the two familiar purposes of the rule—(1) to deter unconstitutional searches and seizures by law enforcement officials, and (2) to uphold judicial integrity. (11 Cal.3d at p. 632.) We further observed "Although the latter purpose might to some extent be served by excluding evidence derived from an unlawful search by a private citizen, the former would not." (*Ibid.*) The exclusion of evidence which is obtained through the illegal actions of a private citizen without the knowledge, approval, consent, or direction of law enforcement personnel does not deter improper law enforcement practices. (See *People v. Superior Court (Meyers)* (1979) 25 Cal.3d 67 [157 Cal.Rptr. 716, 598 P.2d 877] [police cautioned citizen-victims not to search suspect's property without suspect's consent; nonetheless, the victims searched, finding contraband, and their discovery formed an acceptable basis for obtaining a search warrant].)

The police conduct before us was reasonable. Robert, after consulting with Officer Dixon and being told that there was insufficient evidence to enter the car, waited until the officer had left the vicinity to make his entry. The mere police consultation with Robert did not convert his search into an unconstitutional "joint operation" thereby invoking the exclusionary rule. The unifying theme of *Stapleton, McKinnon,* and *Dyas,* namely police foreknowledge or simultaneous awareness of a citizen entry, is wholly lacking in the case before us. ▮ The trial court implicitly found that the police officer neither was aware of Robert's intent to search nor tacitly or expressly authorized or approved the search.

Applying *Stapleton* standards to the facts found by the trial court, we conclude that the trial court correctly refused to exclude the fruits of the search. The police may not encourage illegal private searches, but prescience on the part of law enforcement is not required. The exclusionary rule does not stretch so far.

The judgment is affirmed.

Tobriner, Acting C. J., Mosk, J., Newman, J., White, J.,* Grodin, J.,* and Smith, J.,* concurred.

Appellant's petition for a rehearing was denied July 24, 1981, and the opinion was modified to read as printed above. Bird, C. J., did not participate therein.

---

*Assigned by the Acting Chairperson of the Judicial Council.