[Crim. No. 12740. Fourth Dist., Div. Two. Dec. 21, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY MELVIN BARNARD, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ralph H. Goldsen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Keith I. Motley and Luis R. Vargas, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRIS, P. J.**—In this appeal we consider (1) under what circumstances an appellate court may order a trial court's ex parte certification of materials erroneously omitted from the trial record; (2) whether an asserted public interest not reflected in statutory command can preclude application of the invited error

doctrine; and (3) whether a tactical police decision to delay arrest pursuant to a valid arrest warrant rendered the subsequent entry into defendant's house illegal.

Defendant was convicted after a trial of two violations of Health and Safety Code section 11350 (possession of cocaine) as lesser included offenses of Health and Safety Code section 11352 (counts I and II, sale of cocaine) and, after a motion to suppress evidence was denied, pleaded nolo contendere to violations of Health and Safety Code sections 11350 (count III, possession of cocaine) and 11377 (count IV, possession of quaaludes). Because the facts bearing on the first two counts are almost entirely unrelated to those bearing on the latter two, they are set forth separately.

COUNTS I AND II

*I. Facts*

In July of 1979, William Fernandes, a narcotics investigator with the Drug Enforcement Administration (hereinafter DEA), and Ralph Heatley, an undercover informant, arranged a narcotics purchase. They went to defendant's house in Palm Springs. On entry defendant greeted both men and directed them to a bathroom. There the three men discussed the narcotics transaction. Defendant handed Fernandes 28 grams of cocaine, for which Fernandes paid $2,200. Heatley and Fernandes left.

A second narcotics purchase was arranged and on August 14, 1979, Fernandes and Heatley again went to defendant's house. The three men negotiated in the kitchen. Defendant handed Fernandes a baggie containing 28.2 grams of cocaine, for which Fernandes paid $2,200. Heatley and Fernandes then left. In April 1980 a warrant was obtained for defendant's arrest on narcotics sales charges. The circumstances surrounding execution of that warrant gave rise to the possession charges.

Prior to trial, defendant filed a motion for discovery seeking "all reports of any law enforcement agency relating to the investigation, arrest, and conviction of Ernesto Franco Castaldo in which the name of defendant Gary Melvin Barnard is mentioned." The prosecutor opposed disclosure and invoked a claim of privilege for official information pursuant to Evidence Code section 1040, subdivision (b)(2). The court then held an *in camera* hearing, pursuant to Evidence Code section 915, subdivision (b), to examine the DEA file which was the object of the motion. Only the judge and DEA Agent Hartman were present. The trial court upheld the claim of privilege, finding that defendant's name was mentioned, but at dates totally unconnected with the present allegations. It then returned the file to Agent Hartman. The prosecutor's request that a copy of the

file be made, sealed and preserved for appellate review was denied. Defendant changed his plea to nolo contendere on counts III and IV and proceeded to trial on counts I and II. The jury was unable to reach a verdict, resulting in a mistrial.

A second trial resulted in verdicts of guilty to lesser included offenses of possession of cocaine. The theory of the defense was mistaken identity. Defendant denied commission of any offense, claiming he saw Agent Fernandes for the first time after he was arrested.

During the initial stages of appeal, defendant filed a motion for partial summary reversal, claiming the trial court had reversibly erred in failing to retain a permanent copy of the DEA file in the superior court file. This court denied the motion, "without prejudice to the right to raise the issue in appellant's brief on appeal provided the Drug Enforcement Administration file, certified by the superior court as accurate, has not been received by this court prior to the completion of briefing." We have received the certified file.

## II. The DEA File

### A. The Certification Procedure[1]

Defendant contends that the certification process by which the DEA file was brought up to this court constitutes appellate factfinding in contravention of article VI, section 11 of the California Constitution. That section provides, in pertinent part: "The Legislature may permit appellate courts to take evidence and make findings of fact when jury trial is waived or not a matter of right." In this case jury trial was a matter of right, and was not waived.

Defendant's contention mistakenly equates the certification of the DEA file as accurate by the trial court with the taking of new evidence by this court. No new evidence has been taken or considered by this court. The evidence certified as accurate by the trial court existed at trial and was presented to the trial court, which considered and ruled upon it.

Defendant's reliance on *People* v. *Pena* (1972) 25 Cal.App.3d 414 [101 Cal.Rptr. 804], is misplaced. There, the defendant sought to introduce evidence on appeal which was in conflict with evidence produced at trial, and which had not been presented earlier. The reviewing court properly refused to consider that new evidence on appeal. Here, we consider no new evidence. The case is inapposite.

---

[1]No issue has been raised as to the sufficiency of appellant's preliminary showing of relevancy. Therefore, we follow the example of the parties and the trial court and assume that an adequate showing was made in the first instance to require the *in camera* hearing.

The defendant alternatively maintains that even if the certification procedure is not unconstitutional, it is violative of California Rules of Court, rule 23. That rule contemplates that a party to the appeal, rather than the court *sua sponte*, will move for consideration of additional evidence. This argument is also based on the assumption that the certification process constitutes the taking of new evidence.

The action taken by this court in ordering the DEA file brought up on certification as accurate by the superior court may correctly be understood as an augmentation of the record in accordance with California Rules of Court, rule 12.[2] "The function of the augmentation procedure is to supplement an incomplete but existing record, and the rule is to be construed liberally. Augmentation is not available, however, for the purpose of adding material that was not a proper part of the record in the trial court." (*People* v. *Brooks* (1980) 26 Cal.3d 471, 484 [162 Cal.Rptr. 177, 605 P.2d 1306], citations omitted.)

Since the purpose of the certification procedure ordered in this case was "to supplement an incomplete but existing record," augmentation was appropriate.

It was argued in earlier proceedings before this court that augmentation was not proper since the trial court never made the file part of the record of the case, and it was thus not "part of the original superior court file, including any paper or record on file or lodged with the superior court," as the language of rule 12(a) specifies. This is unpersuasive. California Rules of Court, rule 53 mandates that "[t]he rules shall be liberally construed to secure the just and speedy determination of appeals . . . ." The California Supreme Court has found rule 53's policy of liberal construction specifically applicable to rule 12. (*People* v. *Brooks, supra,* 26 Cal.3d at p. 484; *People* v. *Gaston* (1978) 20 Cal.3d 476, 482-483 [143 Cal.Rptr. 205, 573 P.2d 423].) Accordingly, we conclude that the DEA file was "filed or lodged with the court," since it was in the court's possession and control for the purposes of determining the

---

[2]California Rules of Court, rule 12, provides: "(a) On suggestion of any party or on the judge's own motion, a judge of the reviewing court, on such terms as are deemed proper, may order that any part of the original superior court file, including any paper or record on file or lodged with the superior court, be transmitted to it, or that portions of the oral proceedings be transcribed, certified and transmitted to it, or that an agreed or settled statement of portions of the oral proceedings be prepared and transmitted to it; and when so transmitted they shall be deemed a part of the record on appeal. The clerk of the reviewing court shall mail each party a copy of any augmentation order.

"(b) If any material part of the record, or of any transcript or appendix, is incorrect in any respect, or lacks proper certification, the reviewing court, on suggestion of any party or on its own motion, may direct that it be corrected or certified.

"(c) The reviewing court may submit to the superior court for settlement any differences of the parties with respect to alleged omissions or errors in the record, or in any transcript or appendix, and the superior court shall make it conform to the truth. The reviewing court may also direct that omissions or errors be corrected pursuant to the stipulation of the parties filed with the clerk of that court."

claim of privilege in an *in camera* hearing. The trial court's subsequent relinquishment of possession of the file did not make it automatically unsuitable for augmentation.

## B. Due Process

Defendant further contends that the failure of the trial court to order a copy of the DEA file made, sealed and inserted in the record violated his due process right to an adequate record on appeal, and constitutes reversible error.

Defendant is partially correct. The trial court erred in refusing to seal the DEA file and enter it in the record to provide for possible appellate review, as the prosecutor requested at the conclusion of the *in camera* hearing. Such a procedure is clearly contemplated under California law. Discussing a similar situation, the California Supreme Court has stated that "[W]hen . . . documents [sought to be discovered] contain matters unrelated to the defendant's case whose disclosure would interfere with effective law enforcement [citation], the trial court should inspect the documents and excise the unrelated parts. These parts should be preserved so that the appellate court can reexamine the entire text to determine the correctness of the trial judge's ruling if the defendant appeals." (*In re Waltreus* (1965) 62 Cal.2d 218, 223 [42 Cal.Rptr. 9, 397 P.2d 1001].) The trial judge in the instant case should have complied with this procedure.

Defendant urges that this procedural defect constitutes reversible error. The case law supports an opposite conclusion. Cases in which the defendants have obtained reversals include *In re Roderick S.* (1981) 125 Cal.App.3d 48 [177 Cal.Rptr. 800] (unauthorized destruction of "the critical bit of evidence in this case"—no substitute possible to enable appellate review); *People* v. *Jones* (1981) 125 Cal.App.3d 298 [178 Cal.Rptr. 44] (irretrievable loss of reporter's notes of entire trial; reversal compelled because no substitute possible); *People* v. *Serrato* (1965) 238 Cal.App.2d 112 [47 Cal.Rptr. 543] (destruction of reporter's notes of entire trial); *People* v. *Apalatequi* (1978) 82 Cal.App.3d 970 [147 Cal.Rptr. 473] (irretrievable loss of reporter's notes of argument; no substitute available under circumstances to enable review of claimed prosecutorial misconduct); and *In re Steven B.* (1979) 25 Cal.3d 1 [157 Cal.Rptr. 510, 598 P.2d 480] (destruction of reporter's notes for one day of a two-day juvenile court jurisdictional hearing; no adequate substitute available under circumstances). In each of these cases the loss was irremediable.

Defendant characterizes *People* v. *Hertz* (1980) 103 Cal.App.3d 770 [163 Cal.Rptr. 233], as "identical" to the present case. It is not. There, as here, no reporter was present at a section 1040, subdivision (b) *in camera* hearing. But in that case the *in camera* proceedings were held as part of the discovery pro-

cess prior to a preliminary hearing before a magistrate. The superior court dismissed the charges in part because the magistrate had failed to preserve a reviewable record of the *in camera* hearing. The Court of Appeal affirmed, but concluded that the error *could have been cured* by the superior court in spite of the absence of the reporter; the superior court could have "reconstructed the *in camera* proceedings . . . , made a decision as to the magistrate's exercise of discretion, and prepared a reviewable record in the process." (*Id.*, at p. 781.) Here it is unnecessary to reconstruct the hearing, since we are only concerned with the integrity of the file to enable appellate review of the privilege ruling.

There are also cases in which courts have held that, despite problems with the trial record, an adequate record on appeal could be had through alternative methods; these include *People* v. *Scott* (1972) 23 Cal.App.3d 80 [100 Cal.Rptr. 34] (loss of reporter's notes no bar to appellate review where settled statement provided effective and nonprejudicial substitute); *People* v. *Lee* (1974) 38 Cal.App.3d 749 [113 Cal.Rptr. 641] (loss of prosecution exhibits after first day of jury deliberation not reversible error where no prejudice shown); and *People* v. *Chessman* (1950) 35 Cal.2d 455 [218 P.2d 769, 19 A.L.R.2d 1084]. There, the court reporter had died after completing dictation from his notes of slightly over one-third of a trial transcript which ultimately exceeded 1,800 pages. Another reporter transcribed the notes. Numerous inaccuracies were alleged. The Supreme Court stated that "where . . . we are confronted with a situation not expressly covered by the rules, we should inquire whether there is or can be made available a record on which this court can perform its function of reviewing the cause and determining whether there was error in the court below and, if so, whether such error requires reversal." (*Id.*, at p. 460.) The trial judge and prosecutor had participated in proceedings to settle the record. The defendant had made numerous written claims of inaccuracy; over a third were accepted. The court found the record adequate for review.

The attention paid in these cases to the particular circumstances surrounding the irregularity in the record and the consequences flowing from it simply is not consistent with the rule of per se reversal defendant urges in the present case. The rule that emerges is that reversal is indicated only where critical evidence or a substantial part of a transcript is irretrievably lost or destroyed, and there is no alternative way to provide an adequate record so that the appellate court may pass upon the question sought to be raised.[3]

 In this case the ultimate issue sought to be raised is whether the trial court abused its discretion in ruling that the DEA file should not be disclosed to

---

[3]Defendant's reliance on *Chessman* v. *Teets* (1957) 354 U.S. 156 [1 L.Ed.2d 1253, 77 S.Ct. 1127] is misplaced. He correctly notes that the case "specifically requires that the settlement of a record include some input from the party challenging its accuracy." However, in this case we are not concerned with the settlement of a disputed record of oral proceedings at trial; we are concerned with the authenticity of a document (the DEA file) used to augment the trial record.

the defendant. ■ In order to review this ruling, we must have the file before us. The certification procedure employed in the present case was designed to accomplish this, as is the preparation of a settled statement where the reporter's notes are lost or destroyed. Since the trial court has certified the file before us as identical to the file ruled on originally, and since we must presume the court's ruling is correct, we hold the errors below harmless beyond a reasonable doubt, and for that reason reach the question of abuse of discretion. ■ We have now examined the DEA file and find no abuse of discretion; the references to defendant are unconnected to the present case.

### III. Lesser Included Offense: Invited Error

■ Defendant contends that the trial court erroneously instructed the jury on possession of narcotics as a lesser included offense of possession of narcotics for sale. ■ ■ ■ Specifically, it is argued that since there was no dispute in the evidence as to any element which might distinguish sale from possession, the jury verdict was not rational in light of the evidence; defendant should have been convicted for possession for sale, or nothing at all.[4]

■ We conclude that, since the defendant's trial counsel requested the instruction on the lesser included offense of possession, the doctrine of invited error applies, and defendant will not be heard to complain that the instruction he requested was in fact given by the judge and acted upon by the jury.

■ In California it is established that when a lesser included offense instruction is requested by the defense, the invited error doctrine precludes objection to that instruction on appeal. (See, e.g., *People v. Williams* (1980) 102 Cal.App.3d 1018, 1025 [162 Cal.Rptr. 748]; *People v. Wright* (1969) 272 Cal.App.2d 53, 57-58 [76 Cal.Rptr. 859].) Defendant attempts to avoid application of this rule through reliance on *People v. Graham* (1969) 71 Cal.2d 303 [78 Cal.Rptr. 217, 455 P.2d 153], citing it for the proposition that "the fact that a defense attorney has requested an instruction does not remove it from appellate consideration where it affects the substantial rights of the defendant."

The pertinent language of *Graham* is this: "In the absence of a clear tactical purpose, the courts and commentators eschew a finding of the 'invited error' that excuses a trial judge from rendering full and correct instructions on material questions of law. . . . Accordingly, if defense counsel suggests or accedes to the erroneous instruction because of neglect or mistake we do not find 'invited error'; only if counsel expresses a deliberate tactical purpose in sug-

---

[4]In so arguing defendant seeks to challenge the California rule that conviction of an offense less than that shown by the evidence is favorable error of which a defendant cannot complain. (See *People v. Powell* (1949) 34 Cal.2d 196 [208 P.2d 974].)

gesting, resisting or acceding to an instruction, do we deem it to nullify the trial court's obligation to instruct in the cause." (71 Cal.2d at p. 319.)

In this case we conclude that the defense counsel's request for an instruction on the lesser included offense of narcotic possession did not result from neglect or mistake; on the contrary, the inescapable inference from the fact of defendant's request for an instruction on possession is that trial counsel's tactical purpose was to place before the jury the option to convict on a less serious charge.[5]

Defendant additionally suggests that the invited error doctrine should not apply because " '[a]lthough a defendant may waive rights which exist for his own benefit, he may not waive those which belong also to the public generally.' " (*People* v. *Stanworth* (1969) 71 Cal.2d 820, 834 [80 Cal.Rptr. 49, 457 P.2d 889], quoting *People* v. *Werwee* (1952) 112 Cal.App.2d 494, 500 [246 P.2d 704].)

Defendant misconceives the nature of the *Stanworth* "public rights exception" to the invited error doctrine.

The capital defendant in a recent case, *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248], entered a fee contract which gave his attorneys the rights to his life story. The California Supreme Court held that he could make an effective waiver of this significant conflict of interest on the part of his attorneys and, in the course of so concluding, discussed *Stanworth* and *People* v. *Chadd* (1981) 28 Cal.3d 739 [170 Cal.Rptr. 798, 621 P.2d 837] (cert. den. sub nom., *California* v. *Chadd* (1981) 452 U.S. 931 [69 L.Ed.2d 431, 101 S.Ct. 3066]) "Nothing in *People* v. *Chadd* or *People* v. *Stanworth* indicates that defendant lacks power to waive counsel's potential conflicts of interest. *Chadd* held only that a capital defendant cannot circumvent his statutory disability to plead guilty without consent of counsel. (Pp. 746-755; see Pen. Code, § 1018.) *Stanworth* ruled that no one may divest this court of its statutory and constitutional duty to review a death judgment against him. (Pp. 832-834; see Cal.Const., art. VI, § 11; Pen. Code, § 1239, subd. (b).) In both cases the state has asserted an overriding public interest in full examination of capital charges and sentences, even where the person accused or condemned

---

[5]We are aware that in *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311] the California Supreme Court found that "[u]nder the *Graham* rule, counsel must express a deliberate tactical purpose in objecting to a particular instruction before the failure to give that instruction will be deemed invited error." (*Id.*, at p. 333.) *Wickersham* is clearly distinguishable. In *Wickersham* defense counsel's failure to request an instruction on the lesser included offense of second degree murder *could* have proceeded from "strategy, ignorance, mistake or trust" (leaving the reviewing court in doubt as to whether the error was truly "invited"), whereas, in this case defense counsel's request that the instruction be given evidenced a clear tactical purpose to place before the jury the option to convict on less serious charges.

wishes not to resist. The state has demonstrated no parallel desire to overrule a defendant who, with full information, chooses to make a vigorous defense through counsel in whom he has special confidence." (30 Cal.3d at pp. 619-620, fn. 11, citations omitted.)

The implication for this case is clear: the effect of invited error cannot be overcome by the public rights exception of *Stanworth* unless the state asserts an overriding public interest in seeing that the error is not waived. This public interest was manifested in *Chadd* by specific statutory command, and in *Stanworth* by specific statutory and constitutional commands.

The only statutory authority defendant cites in support of his contention that the invited error doctrine should not have its ordinary effect in this case is Penal Code section 1259. That section provides that an appellate court *may* review any instruction given, refused or modified in the lower court even though no objection was made below. It is plainly not mandatory in nature, and thus is not within the public rights exception to the invited error doctrine. In this case, as in *Maxwell*, the state has asserted no overriding public interest expressed through statutory command which would render the defendant's deliberate tactical choice ineffective. As such, he must live with its consequences on appeal.

COUNTS III AND IV

*I. Facts*

Defendant entered pleas of nolo contendere to counts III and IV, and the only issue on appeal concerns the search of defendant's house which gave rise to the evidence of those offenses.

On April 11, 1980, five investigators from the Riverside County Sheriff's Department sought to execute an arrest warrant for defendant.[6]

When they first knocked on the door, there was no answer, so the five officers congregated around a pool in the back yard of defendant's house. While waiting, the group decided to allow defendant to enter the house prior to serving the warrant. The reason for this decision was "to contain him safely within the house so that it would preclude a foot pursuit or a vehicle pursuit or any shooting in the neighborhood in the event that persons were armed." Within 10 to 15 minutes, Sergeant Hadley observed a blue Chevrolet pull into the driveway, and informed the other officers of its presence. Several people exited the car. The distance from the parked car to the front door was about 40 feet.

---

[6]The warrant stemmed from the offenses alleged in counts I and II.

The officers waited until they entered the house, then with guns drawn they knocked on the door. Detective Chamberlain identified himself as he knocked, stating "we have an arrest warrant." A Susie Guttman opened the door, and was asked if defendant was present. She gestured behind her to where defendant was standing. Chamberlain entered and placed him under arrest.

Hadley followed Chamberlain to assist. Hadley observed movement to his right, and looked into the kitchen, where he saw a derringer on the stove. As he approached to secure the gun he saw a green dish with white powder on it, which he suspected to be cocaine. Also on the dish was a spoon-like instrument of a type commonly used to ingest that drug.

As a result of Hadley's observation, investigators entered other rooms in the house in order to secure them while other officers left to obtain a search warrant.

The trial court denied defendant's motion to suppress various items seized during the search of defendant's house.

## II. Discussion

Defendant contends that the trial court improperly denied his motion to suppress evidence, because (1) the officers impermissibly delayed the execution of the arrest warrant until he had entered his house, making the subsequent warrantless search of his house improper, and (2) even assuming the delay in arrest was justifiable, the scope of the search exceeded that permissible as incident to the arrest.

More particularly, defendant argues that the officers impermissibly delayed the arrest until he had entered the house solely as a "pretext" to enter the house and conduct a search for which they would not be able to obtain a warrant.

It is established that "a search is constitutionally invalid, and that its fruits will be suppressed where an arrest has been employed as a 'pretext' to make it." (*Bowyer* v. *Superior Court* (1974) 37 Cal.App.3d 151, 160 [111 Cal.Rptr. 628, 112 P.2d 266]; see *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 154 [98 Cal.Rptr. 649, 491 P.2d 1]; *People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; *United States* v. *Lefkowitz* (1932) 285 U.S. 452, 467 [76 L.Ed. 877, 883-884, 52 S.Ct. 420, 82 A.L.R. 775]; *Eiseman* v. *Superior Court* (1971) 21 Cal.App.3d 342, 348-349 [98 Cal.Rptr. 342].) But the determination of whether a pretext was employed—i.e., whether the of-

ficers acted in good faith in making the arrest as they did—is necessarily a question of fact. ▮▮▮ The trial court's findings on questions of fact must be upheld on appeal of a denial of a motion to suppress if they are supported by substantial evidence. (*People* v. *North* (1981) 29 Cal.3d 509, 513 [174 Cal.Rptr. 511, 629 P.2d 19]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) ▮▮▮ In this case the trial court's implied finding that the officers did not delay the arrest as a pretext to gain entry to the house is supported by substantial evidence. The arresting officers testified that they decided to make the arrest after the defendant had entered the house to preclude a foot or vehicle pursuit, and to foreclose the possibility of shooting in a residential area or the use of a car as an instrument to resist arrest. These considerations are founded on a concern for the safety of officers and public which is entirely proper. There is nothing in the transcript to indicate that the decision to delay arrest was made in bad faith. We reject defendant's first contention.

▮▮▮ Defendant next argues that even if the delay in arrest was not impermissible, the scope of the search exceeded that allowable as incident to arrest, relying on *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

*Chimel* is inapplicable. "[O]ne of the 'well-recognized exceptions' referred to in *Chimel,* is the rule that 'objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.' [Citations.]" (*People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961]; accord, *People* v. *Mack* (1980) 27 Cal.3d 145, 150 [165 Cal.Rptr. 113, 611 P.2d 454].) In this case the evidence sought to be suppressed was a direct result of Sergeant Hadley's observation of the green dish with white powder on it. If he had a right to be in the position to have that view, the subsequent search was constitutional.

We conclude that Sergeant Hadley had a right to be in the position to have that view. When Officer Chamberlain entered the house to arrest defendant, Hadley followed to assist. This was reasonable in view of the fact that the house contained an undetermined number of persons. The stove on which the gun lay was plainly visible from where Hadley and Chamberlain stood. Hadley looked in the direction of the stove because he observed movement; on seeing the gun, and reasonably suspecting that there might be other persons in the house, he was justified in seizing it immediately in order to assure his safety and that of the other officers. In doing so, Hadley saw the green dish with white powder in plain sight. It is not contested that this observation could properly result in the issuance of a search warrant.

## DISPOSITION

The judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.

A petition for a rehearing was denied January 12, 1983, and appellant's petition for a hearing by the Supreme Court was denied March 23, 1983.