[Crim. No. 43456. Second Dist., Div. Four. Nov. 14, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD HARMON YACKEE, Defendant and Appellant.

**COUNSEL**

Robert S. Gerstein, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Paula B. Palmor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant was charged with attempting to transport cocaine into California. He appeals a judgment of conviction entered after a plea of guilty. We affirm.

On July 15, 1981, the defendant took an airline flight from Fort Lauderdale, Florida, to Los Angeles, California. Like many unfortunate travellers, however, not all his luggage made the trip with him. When he arrived in Los Angeles, the defendant discovered that one of his suitcases was missing.

Hoping to recover his lost luggage, the defendant filed a missing baggage report with the airline. He described the missing suitcase, stated that it was locked and gave the airline his claim check number. To aid in identifying the bag, the airline asked the defendant to specify three items inside the suitcase. The defendant was told that the airline often opened lost luggage to check its contents for the items described, as a way of determining ownership. The defendant complied, stating there was a white T-shirt and a towel inside.

The next evening, when the bag still had not been located, the defendant amended his description. He added that there was a valuable statue inside and that the suitcase might have an identification tag on it with a different name and address than the one he had given for himself. Several hours later, a bag with the same general description as the defendant's was located in Atlanta, Georgia. It bore an identification tag with the name and address suggested by the defendant. The bag was unlocked, however, and its claim check did not match the defendant's. To verify that this was the defendant's lost bag, the suitcase was opened by an airline baggage agent in Atlanta. Inside she found both a white T-shirt and a towel. While searching for the statue, however, she came across a clear plastic bag filled with a flour-like substance. Subsequently, this proved to be approximately two pounds of cocaine. The airline called the police to investigate.

It appears from the record that, at some point before the police arrived, the suitcase was reclosed by lowering the top onto the bottom. Its sides were not zipped closed, however, nor was it locked. When the investigating officer arrived, he was shown to the room where the suitcase was being kept. In his presence, the airline baggage agent reopened the suitcase, revealing the suspicious bag and the contents. A sample was removed which tested positive for cocaine.

The bag was resealed—its contents intact—and flown to Los Angeles. There, police arrested the defendant as he tried to reclaim his lost luggage.

Based on the observations of the investigating officer in Atlanta, a search warrant was issued for the suitcase. As expected, the search revealed the remaining cocaine. Defendant was charged with violation of Health and Safety Code section 11352, the unlawful transportation of a controlled substance. His motion for suppression of this evidence under Penal Code section 1538.5 was denied. It is from this denial that appellant appeals.

## CONTENTIONS

Defendant's appeal comprises two grounds: First, defendant contends that the search warrant issued in California is the fruit of an earlier unwarranted search in violation of defendant's rights, and that the evidence so obtained must therefore be suppressed. Second, the defendant argues that the trial court improperly denied his motion to substitute counsel one day before trial was scheduled to begin, thus depriving him of effective assistance of counsel. We disagree.

### I

The defendant admits that the airline's search of his luggage was proper. With this, we agree. ■ "Historically, courts have consistently held that the Fourth Amendment's prohibition against unreasonable search and seizure does not apply to searches by private citizens. [Citation.]" (*People* v. *North* (1981) 29 Cal.3d 509, 514 [174 Cal.Rptr. 511, 629 P.2d 19].) This is so even if the private search is unreasonable or unwarranted. (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 911-12 [103 Cal.Rptr. 897, 500 P.2d 1097]; cert. den. 411 U.S. 931 [36 L.Ed.2d 390, 93 S.Ct. 1891].) In the instant case, however, the airline's search was eminently reasonable. While the bag's general appearance and name tag matched the description given by the defendant, the claim checks did not. The airline was fully justified in opening the bag to clarify this discrepancy. Simply knowing a bag's description and its name tag does not assure ownership. Anyone who merely saw the bag would know this much. The airline's belief that this might not be the defendant's bag was well supported, as the bag's identification tag was not in the defendant's name and its claim check did not match the defendant's. Not to open the bag and verify its contents meant entrusting it to someone whose claim to ownership was dubious. This could well have made the airline liable to the bag's true owner.

Moreover, when first making his claim, the defendant was informed that it was airline policy to open bags to verify their contents. The defendant impliedly agreed to this by listing two items in the bag the first evening and then returning the next night to list a third. Although the defendant may have wished to keep his bag unopened, he cannot claim that he was unaware

that it might be searched. Nor did defendant ever actually refuse the airline permission to search his bag. Such a refusal might have made the search less reasonable, but it would not have changed its constitutionality. (*People* v. *McKinnon, supra,* 7 Cal.3d 899.)

■ Defendant's principal contention is that the subsequent reopening of the suitcase and the search by the investigating officers in Atlanta was an unlawful search and seizure under *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476].) We do not agree.

In reaching this decision we accept defendant's contention that the re-opening of the suitcase by the airline baggage agent in the presence of the investigating officer constituted a "joint operation," and therefore, was not protected private action. ■ In *People* v. *North* (1981) 29 Cal.3d 509, 515 [174 Cal.Rptr. 511, 629 P.2d 19], our own Supreme Court reaffirmed the rule articulated in *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628 [114 Cal.Rptr. 114, 522 P.2d 674], " 'The exclusionary rule will . . . be applied if the private citizen acted as an agent of the police or participated in a joint operation with law enforcement authorities *who either requested the illegal search or knowingly allowed it to take place* without protecting the third party's rights.' " (Italics in original.) In the instant case, the investigating officer knowingly allowed the airline to reopen the suitcase in his presence, for his benefit, without intervening to stop the search. Thus, what had heretofore been a purely private search became a joint operation with the police.

■ Such joint action, however, does not render this search illegal. The recent Supreme Court decision in *United States* v. *Jacobsen* (1984) 466 U.S. 109 [80 L.Ed.2d 85, 104 S.Ct. 1652] is squarely in point. In *Jacobsen,* Federal Express employees opened up a parcel at their Minneapolis-St. Paul airport office and discovered inside several small bags filled with white powder. They then notified agents of the Drug Enforcement Administration who, without a warrant, reopened the package and examined its contents. The court stated: "Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. . . . The fact that prior to the field test, respondent's privacy interest in the contents of the package had been largely compromised, is highly relevant to the reasonableness of the agents' conduct in this respect. The agents had already learned a great deal about the contents of the package from the Federal Express employees, all of which was consistent with what they could see. The package itself, which had previously been opened, remained unsealed, and the Federal Express employees had

invited the agents to examine its contents. Under these circumstances, the package could no longer support any expectation of privacy . . . ."

*Jacobsen* is clearly controlling in this case.[1] Here, the airline employee searched the suitcase and uncovering the suspicious baggie, invited the police in to view its contents. As in *Jacobsen,* the package (in this case the suitcase) remained unsealed. The investigator's search was even less intrusive than the extensive manipulation of the package permitted by *Jacobsen.* All that was required was to lift the top of the suitcase to reveal the baggie to plain sight. In doing so, the police investigator infringed no constitutionally protected privacy that had not already been negated by the previous private search. We conclude, thereon, that the trial court did not abuse its discretion in denying defendant's motion to suppress.[2]

## II

█ Defendant's second contention is that the trial court's denial of his motion to substitute counsel and grant a continuance deprived him of effective assistance of counsel. We disagree.

Penal Code section 1050 provides that: "Continuances shall be granted only upon a showing of good cause." █ It has long been the rule in California that an application for a continuance is addressed to the sound discretion of the trial court. (*People* v. *Collins* (1925) 195 Cal. 325, 332 [233 P. 97].) In the absence of a clear abuse of discretion, the trial court's determination will not be disturbed on appeal. (*People* v. *Duck Wong* (1976) 18 Cal.3d 178, 189 [133 Cal.Rptr. 511, 555 P.2d 297].) We do not find that the trial court abused its discretion in this case.

---

[1]As the incident in this case occurred before June 9, 1982, the holding in *People* v. *Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149] indicates that *Jacobsen* is not binding authority in interpreting article I, section 13 of the California Constitution. However, the only prior California case known to the court on this subject, *People* v. *Riegler* (1981) 127 Cal.App.3d 317, 325 [179 Cal.Rptr. 530], vacated 463 U.S. 1222 [77 L.Ed.2d 1405, 103 S.Ct. 3564] reheard 159 Cal.App.3d 1061 [206 Cal.Rptr. 223], cites as the authority *Walter* v. *United States* (1980) 447 U.S. 649 [65 L.Ed.2d 410, 100 S.Ct. 2395], a plurality opinion subsequently interpreted by the majority in *Jacobsen, supra,* 466 U.S. 109 [80 L.Ed.2d 85].

[2]Respondent urges on us as an alternative grounds for decision the holding in *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097] [cert. den. 411 U.S. 931 (36 L.Ed.2d 390, 93 S.Ct. 1891)], that packages assigned to a common carrier may be searched without a warrant. This holding of *McKinnon* has been impliedly overruled both by *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] and *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467]. (Cf. *Bell* v. *Superior Court* (1980) 101 Cal.App.3d 238, 244-45 [161 Cal.Rptr. 455]; *People* v. *Sapper* (1980) 102 Cal.App.3d 301, 304 [162 Cal.Rptr. 360]; *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].)

Defendant's motion to relieve his private counsel and substitute another of his choosing came only one day before trial was scheduled to begin. At that time, defendant's counsel claimed that there had been a total breakdown of communication. The trial court granted defendant an *in camera* hearing to consider the merit of these claims. His motion was denied. We find no abuse of discretion in this determination. As the trial court noted, the resolution of this case had been continued on defense motions for over one year from the date of arrest. The observations of the court in *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 860 [85 Cal.Rptr. 485] are equally applicable here: "Defendant presents a classic picture of one of the nightmares of the trial bench, the reluctant defendant to whom trial delay is a recognized, if not approved, technique. The defendant is obviously no stranger to court proceedings and was ingenious in his efforts to delay the trial. Based on the record of this case, we have a grave suspicion as to the good faith of the defendant in his efforts to communicate with his counsel prior to trial." A witness's credibility is for the trier of fact to determine and we find no grounds for reversing the trial court's decision. (*Davis* v. *Judson* (1910) 159 Cal. 121, 128 [113 P. 147].)

The judgment is affirmed.

Woods, P. J., and McClosky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 17, 1984.