**STATE of Iowa, Appellee,**

v.

**John Avery COY, Appellant.**

**No. 85–1842.**

Supreme Court of Iowa.

Dec. 17, 1986.

Rehearing Denied Jan. 16, 1987.

Charles L. Harrington, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., G. Wylie Pillers III, Co. Atty., and Gary Rolfes, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

After jury trial John Avery Coy was convicted of two counts of engaging in lascivious acts with a child in violation of Iowa Code section 709.8(1) (1985). In this appeal he challenges two trial court rulings. Finding no error, we affirm.

In the early morning hours of August 3, 1985, two young girls, spending the night in a makeshift tent located in the backyard of one of their homes, were sexually assaulted. Suspicion early focused on Coy who at that time lived next to the home where the girls were staying. Following a search of his home, Coy was charged and tried.

On appeal Coy challenges trial court's failure to suppress certain items of evidence he claims were obtained in violation of his fourth amendment right to be free from unreasonable searches and seizures. Coy's second alleged error focuses on the

use at trial of a screen that allowed him to see and hear the victims testify but prevented them from seeing him. He contends this violated his sixth amendment right to confront witnesses as well as his fourteenth amendment right to a fair trial. We first address Coy's fourth amendment claim.

■ I. Before trial, Coy moved to suppress evidence seized during the search of his residence. While this evidence was seized under warrant, Coy asserted a portion of the information used to demonstrate probable cause for issuing the warrant was itself obtained in violation of his fourth amendment rights. Specifically, Coy contended two private citizens, acting as agents of the police, illegally entered and searched his residence. These individuals reported their findings to police who used this information to establish the probable cause necessary to obtain a search warrant.

Following a pretrial hearing, trial court denied the suppression motion, finding the challenged search was private in nature and thus beyond the scope of any fourth amendment prohibition.

The legal principles governing Coy's contentions are well established. The fourth amendment, made applicable to the states by operation of the due process clause of the fourteenth amendment, *Mapp v. Ohio*, 367 U.S. 643, 654–57, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081, 1089–91 (1961), proscribes certain governmental action in searches and seizures. The mandates of the fourth amendment, however, are "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent [or instrument] of the Government or with the participation or knowledge of any governmental official.' " *United States v. Jacobsen*, 466 U.S. 109, 113–14, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410, 421 (1980) (Blackmun, J., dissenting)); *see also State v. Flynn*, 360 N.W.2d 762, 767 (Iowa 1985); *State v. Bakker*, 262 N.W.2d 538, 546 (Iowa 1978).

Whether a private citizen has become an agent or instrument of the state depends on the total circumstances surrounding the challenged conduct. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564, 595 (1971). Factors variously considered and weighed by courts include: (1) whether the state directly or indirectly encouraged or participated in the challenged conduct; (2) whether the state, although knowing the challenged conduct was occurring or was likely to occur, did nothing to prevent it; (3) whether the challenged conduct was intended to assist law enforcement officials or to further some other end; and (4) whether law enforcement officials themselves could have undertaken the conduct without violating the defendant's fourth amendment rights. *See id.; United States v. Walsh*, 791 F.2d 811, 814 (10th Cir.1986); *United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir.1985) (per curiam); *United States v. Miller*, 688 F.2d 652, 657 (9th Cir.1982); *People v. North*, 29 Cal.3d 509, 514, 629 P.2d 19, 22, 174 Cal.Rptr. 511, 514 (1981).

At bottom, a private search, untainted by improper governmental involvement, implicates no fourth amendment interest regardless whether the search was accidental or deliberate, reasonable or unreasonable, and regardless whether the search may itself give rise to civil or criminal liability. *See Jacobsen*, 466 U.S. at 115, 104 S.Ct. at 1657, 80 L.Ed.2d at 95; *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921); *State v. Holliday*, 169 N.W.2d 768, 771 (Iowa 1969).

Our review of trial court's ruling on Coy's suppression motion, involving as it does a claimed constitutional violation, requires an independent, de novo evaluation of the total circumstances shown by the record. *State v. Baldwin*, 396 N.W.2d 192, 193 (Iowa 1986); *State v. Campbell*, 326 N.W.2d 350, 352 (Iowa 1982).

The facts surrounding the challenged search are largely undisputed. The girls reported the attack at approximately 6 a.m.

on the morning of August 3, 1985. They were taken immediately to a nearby hospital where they were examined and one of the girls was interviewed by police Sergeant Speakman. Between 8:30 and 9 a.m., Speakman, the second girl, and her parents returned home to the scene of the sexual assault.

While discussing the incident with the girl and her parents, the father of the girl suggested Coy as a possible suspect. The father's suspicions appear to have been based largely on the girls' statements coupled with his own observations of Coy the day before the attack. Coy soon was observed leaving his residence with a suitcase.

Sergeant Speakman approached Coy and spoke with him about the incident. While Speakman was talking with Coy, a computer check disclosed an outstanding arrest warrant for Coy, based on a traffic violation. Coy was arrested and taken into police custody. Speakman then returned to the girl's home and continued interviewing her.

Approximately an hour later and while the girl was still being interviewed, her father and another neighbor told Speakman they had just completed a search of Coy's residence. They reported finding a yellow cup like one the assailant had taken from the girls' tent. Sergeant Speakman later testified he was "pleasantly surprised" by this information.

On the strength of this and other information, Speakman applied for and obtained a search warrant for Coy's residence. The search warrant was executed, and evidence later admitted against Coy was discovered and seized. This evidence included the yellow cup, a flashlight, and flashlight batteries, all of which matched the description of equipment taken from the victims.

In challenging trial court's ruling, Coy contends the evidence should have been suppressed because in entering his residence the girl's father and the neighbor were acting as agents of the police. Coy argues his initial arrest on the outstanding warrant was but a ploy used to get him out of the way. Then, once he was in custody, police encouraged or simply stood by while the illegal search took place.

In taking this position Coy relies heavily on Sergeant Speakman's testimony he was pleasantly surprised by the news of the discovery. Coy also emphasizes evidence showing the neighbor who accompanied the girl's father during the house search had earlier been requested by police officers to assist them in a search of the neighborhood yards.

The officers, when earlier investigating the crime, were questioned by the neighbor as they walked through his backyard. The officers explained they were conducting a general yard search for clothing worn by the attacker and a yellow drinking cup, a flashlight, and apparel taken from the girls.

The officers asked the neighbor to walk around the neighborhood to see if he could find any of these items. The neighbor walked through yards for several blocks unsuccessfully looking for the evidence. Following this search, the neighbor and the girl's father entered and searched Coy's residence.

At the suppression hearing, Sergeant Speakman and another officer testified without contradiction they had no idea the father and the neighbor were going to search Coy's residence and had not encouraged them to do so. The father and neighbor testified they acted wholly on their own and no officer specifically or by implication suggested they enter Coy's residence.

Additionally, Coy has never contended the outstanding warrant on which he originally was detained was trumped up or somehow manufactured. Once Sergeant Speakman learned of the warrant's existence it was his duty to place Coy under arrest. Finally, that Speakman was pleasantly surprised by the discovery of evidence shows nothing more than a natural reaction to unexpected good news.

We conclude no impermissible agency relationship was present in this case. Trial court properly denied Coy's motion to sup-

press the evidence seized from his residence.

■ II. We turn now to Coy's second claimed error. Trial court granted State's request that a screen be placed in front of Coy during the two girls' testimony. This screen allowed Coy to see the girls and hear their testimony but prevented them from seeing him.

Coy challenges the use of this screening device on two grounds. He claims a violation of his constitutional right to confront the witnesses against him. Coy additionally asserts the screen created a strong and prejudicial inference of guilt, violating his right to a fair trial. Again reviewing both constitutional claims de novo, we reject Coy's contentions. *See State v. Nelson,* 390 N.W.2d 589, 591 (Iowa 1986); *State v. Holland,* 389 N.W.2d 375, 378 (Iowa 1986).

Use of the screening device was authorized by a recently enacted Iowa statute that in relevant part provides:

> The court may require a party be confined to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party.

Iowa Code § 910A.3(1) (Supp.1985). The statute also requires a court authorizing a screening device "to insure that the [defendant] and counsel can confer during testimony and [to] inform the child that the [defendant] can see and hear the child during testimony." *Id.* Use of such a device is limited to children under age fourteen. *Id.*

In challenging trial court's authorization of the screening device, Coy makes no assertion trial court failed to comply with the explicit terms of Iowa Code section 910A.3(1). Rather, Coy argues trial court, although not statutorily required to do so, was constitutionally required to find the screen was necessary before allowing it to be used. Because we conclude the express requirements of section 910A.3(1) fully protect Coy's confrontation right, we hold trial court had no obligation to make an independent finding of necessity.

The sixth amendment states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The right secured to criminal defendants by this amendment is applicable to the states by operation of the fourteenth amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965).

The confrontation right serves several basic purposes. Contrary to Coy's arguments, confrontation is "not [guaranteed] for the idle purpose of [allowing a defendant to] gaze[ ] upon the witness or of being gazed upon by [her]." *State v. Strable,* 313 N.W.2d 497, 500 (Iowa 1981) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974)). Primarily, confrontation is guaranteed "for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." *Id.* *See also Lee v. Illinois,* ── U.S. ──, ──, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 525–26 (1986); *Delaware v. Van Arsdall,* ── U.S. ──, ──, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682–83 (1986); *Holland,* 389 N.W.2d at 378–79; *State v. Davis,* 269 N.W.2d 434, 438 (Iowa 1978).

As a secondary (and at times dispensable) purpose, the right of confrontation enables:

> [T]he *judge* and the *jury* ... to obtain the elusive and incommunicable evidence of a *witness' deportment while testifying,* and a certain subjective moral effect is produced upon the witness.... This secondary advantage, however, *does not arise from the confrontation of the opponent and the witness; it is not the consequence of those two being brought face to face.* It is the witness' presence before the *tribunal* that secures the secondary advantage....

*Strable,* 313 N.W.2d at 500 (emphasis in original and emphasis added) (quoting 5 J. Wigmore, *Evidence,* § 1395, at 153–54 (Chadbourn rev. 1974)); *see also Ohio v.*

*Roberts,* 448 U.S. 56, 69, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 606 (1980); *Lee,* —— U.S. at ——, 106 S.Ct. at 2062, 90 L.Ed.2d at 526; *Holland,* 389 N.W.2d at 379; *State v. Froning,* 328 N.W.2d 333, 336 (Iowa 1982); *State v. Castillo,* 315 N.W.2d 63, 66 (Iowa 1982).

An additional function served by confrontation was recently reiterated by the Supreme Court in *Illinois v. Lee.* There, the Court noted confrontation " 'insures that the witness will give his [or her] statements under oath—thus impressing him [or her] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury.' " —— U.S. at ——, 106 S.Ct. at 2062, 90 L.Ed.2d at 526 (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970)).

In this case all three of the above purposes were fulfilled. First, Coy's attorney cross-examined both girls fully and without limitation. Second, the girls' testimony, both direct and cross-examination, occurred in court and in full view of the judge and jury, who thus were able to observe their demeanor and determine the credibility of their testimony. Third, both girls testified under oath. Before they testified trial court carefully insured they understood the oath and were aware of their moral and legal obligation to tell the truth. It is noteworthy although not constitutionally significant that Coy was able to see and hear the girls, and, while they could not see him, they were made aware he was there.

Under these circumstances, we conclude Coy's right of confrontation was not infringed. Our conclusion was foreshadowed by *State v. Strable,* in which we determined trial court's decision to permit a blackboard to separate a sexual abuse victim from the defendant during the victim's testimony, even if error, did not compromise defendant's right of confrontation and thus was harmless beyond a reasonable doubt. 313 N.W.2d at 501.

In reaching this conclusion, we reject Coy's contention trial court could not constitutionally permit the screen authorized by Iowa Code section 910A.3(1) absent a showing of necessity. In the confrontation clause context, the issue of necessity arises when a witness is unavailable for trial and a party seeks to introduce some prior statement or testimony of that witness. *See Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538, 65 L.Ed.2d at 607; *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255, 258 (1968); *State v. Zaehringer,* 325 N.W.2d 754, 759 (Iowa 1982); *Castillo,* 315 N.W.2d at 66. Here, both girls were present at trial and testified under oath.

■ III. We turn finally to Coy's assertion trial court's ruling allowing use of the screening device impermissibly prejudiced his right to a fair trial in violation of the fourteenth amendment. Coy argues utilization of this device during the girls' testimony created the same inference of guilt as can prison garb, or the use of handcuffs or leg irons. *See Estelle v. Williams,* 425 U.S. 501, 512–13, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976); *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970); *State v. Ellis,* 350 N.W.2d 178, 183 (Iowa 1984); *State v. Evans,* 169 N.W.2d 200, 210–11 (Iowa 1969).

The Supreme Court addressed this issue in *Holbrook v. Flynn,* where defendant claimed prejudice in the deployment of four uniformed and armed state troopers in the courtroom during his trial. —— U.S. ——, ——, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525, 534 (1986).

In analyzing defendant's claim, the Supreme Court recognized certain actions may be so inherently prejudicial they will only be permitted if justified by an essential state interest. *Id.* The Supreme Court also made clear, however, that when a challenged activity is not inherently prejudicial, defendant's right to a fair trial is not adversely affected absent a showing of actual prejudice to the defendant. *Id.* at ——, 106 S.Ct. at 1348, 89 L.Ed.2d at 537. The basic inquiry, of course, must be whether a par-

ticular practice is inherently prejudicial, as Coy claims in this case.

A practice is inherently prejudicial if in a particular case it is likely to compromise defendant's constitutional right " 'to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *Id.* at ——, 106 S.Ct. at 1345, 89 L.Ed.2d at 533 (quoting *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, 475 (1978)). If a practice gives rise to an unmistakable brand of guilt or creates an unacceptable risk the jury may consciously or subconsciously be influenced in their deliberations, the practice is inherently prejudicial. *Id.* at ——, 106 S.Ct. at 1347, 89 L.Ed.2d at 535–36. Because inherently prejudicial practices may influence a jury subconsciously, a court cannot always assume cautionary instructions will be sufficient to prevent prejudice.

Here, the screening device was used only during testimony of the two children. The jury, already aware of the charges and their embarrassing nature, likely concluded the screen was being used to reduce the trauma necessarily attendant to the children's testimony. Trial court encouraged this assumption by explaining to the jury the device was simply something used in procedures involving children. Further, unlike the presence of prison garb, or gags or restraining devices, the limited use of the screen did not tend to brand Coy as guilty. We hold use of the screen was not inherently prejudicial in the circumstances of this trial.

Because use of the screen was not inherently prejudicial, a reversal would require Coy to show actual prejudice. Coy, however, has not made such a showing. His contention the use of the screen denied him his right to a fair trial is without merit.

We affirm the district court judgment.

AFFIRMED.