**Hosea MORGAN, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 89–1950.**

Supreme Court of Iowa.

April 17, 1991.

Rehearing Denied May 13, 1991.

Brian L. Danielson of Pattie, Hinshaw, Danielson & Kloberdanz, P.C., Marshalltown, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., Diann Wilder-Tomlinson, Marshall County Atty., and Peter J. Grady, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In this postconviction relief proceeding, we must decide whether we should apply a recent United States Supreme Court decision retroactively to the applicant's conviction. We must also decide whether the applicant's appellate counsel rendered ineffective assistance. That claim is based on counsel's failure to prolong the applicant's case so the applicant could assert retroactive application of the decision. The district court denied the applicant relief on both issues. We affirm.

I. *Background Facts and Proceedings.*

In November 1986 Hosea Morgan, the postconviction relief applicant, was convicted of sexual abuse in the third degree. *See* Iowa Code § 709.4 (1985). His sentence was enhanced to a term of incarceration not to exceed fifteen years because he was an habitual offender. *See* Iowa Code §§ 709.4, 902.8, 902.9(2).

During the criminal trial, the prosecuting witness—a thirteen-year-old child—testified by one-way closed circuit television. In taking her testimony the court followed the following procedure now codified in Iowa Code section 910A.14(1):

A court may, upon its own motion or upon motion of any party, order that the testimony of a child, as defined in section 702.5, be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court.... [A]ny person whose presence, in the opinion of the court, would contribute to the welfare and well-being of the child may be present in the room with the child during the child's testimony.

This procedure was originally codified at section 910A.3(1) (Supp.1985). This section was later renumbered 910A.14(1). 1986 Iowa Acts, ch. 1178, § 19.

Before the child testified, the district court made no findings that the procedure was necessary to protect her. The child gave her testimony from a room next to the courtroom. A video monitor recorded and displayed the child's testimony to those in the courtroom. The child, however, was not able to see the defendant. Only the child's guardian ad litem and the child's natural mother were present in the room with the child when she testified. Counsel and the judge had microphones so they could talk to the child.

Before the child testified, Morgan's counsel objected to this procedure on the grounds that section 910A.14(1) violated Morgan's sixth amendment right to confrontation. In support of the objection, counsel stated:

I believe that pursuant to the confrontation clause, the alleged victim in this case should be required to be in the courtroom to face my client and to face the jury while she is testifying, and the procedure that we have here, she does not see anyone in the courtroom. She just hears the voices, and although we can see her, she does not have to come face to face with the person that she is accusing of a

crime. And we would, therefore, submit that she should be required to testify in person.

The court overruled the objection.

Morgan again raised the confrontation issue in his motion for new trial, which was overruled.

Morgan appealed his conviction to this court on February 4, 1987. The state appellate defender's office was appointed to represent Morgan on the appeal, and B. John Burns of that office handled it. In the appeal Burns squarely raised the confrontation issue.

Burns had handled the appeal in *State v. Coy*, which we decided in December 1986. *See State v. Coy*, 397 N.W.2d 730 (Iowa 1986). In that case the district court granted the State's request that a screen be placed in front of Coy during the testimony of two children. The children were alleged victims of Coy's lascivious acts. The screening procedure was codified in what was then section 910A.3(1) (Supp.1985). On appeal Burns challenged the procedure on two grounds. He claimed the procedure violated Coy's sixth amendment right to confront witnesses against him and his fourteenth amendment right to a fair trial. *See* U.S. Const. amends. VI, XIV. We rejected both claims and affirmed Coy's conviction. *Coy*, 397 N.W.2d at 733–35.

After our decision in *State v. Coy*, Burns sought the help of Paul Papak, a law professor at the University of Iowa Law School. Burns asked Papak to appeal the case to the United States Supreme Court. Papak did, and on June 26, 1987, the Supreme Court noted probable jurisdiction. *Coy v. Iowa*, 483 U.S. 1019, 107 S.Ct. 3260, 97 L.Ed.2d 760 (1987). The Supreme Court heard the case in January 1988.

While *Coy v. Iowa* was pending in the Supreme Court, Burns was handling Morgan's appeal to our court. We transferred Morgan's case to the court of appeals. That court rejected Morgan's confrontation challenge based on our decision in *State v. Coy* and affirmed his conviction on March 9, 1988. *State v. Morgan*, 428 N.W.2d 318 (Iowa App.1988) (Table No. 87–243).

We overruled Morgan's application for further review on April 22. Neither Morgan nor Burns took any further direct action.

On May 9, while *Coy v. Iowa* was still pending, Morgan filed a pro se application for postconviction relief. He asked to have his conviction set aside for a number of reasons. *See* Iowa Code § 663A.3 (1987).

On June 29, 1988, the Supreme Court handed down its decision in *Coy v. Iowa*. The Court held that Coy's sixth amendment confrontation right had indeed been violated. *See Coy v. Iowa*, 487 U.S. 1012, 1022, 108 S.Ct. 2798, 2803–04, 101 L.Ed.2d 857, 867 (1988). This was one week after Morgan's right to seek certiorari had expired.

Morgan's court-appointed lawyer—an attorney other than Burns—amended Morgan's pro se application on July 11. In this amended application Morgan asserted, among other things, that Burns was ineffective because he did not raise a sufficiency of the evidence issue on appeal. Morgan also claimed his conviction could not stand because the Supreme Court had recently overturned *State v. Coy*. The court of appeals had relied on this case in rejecting Morgan's confrontation claim. Morgan made no further assertions about *State v. Coy* or *Coy v. Iowa*.

The State answered on July 28. It denied that *Coy v. Iowa* affected Morgan's conviction.

In September Morgan applied for summary disposition. *See* Iowa Code § 663A.6. He alleged that there was no issue of fact that required a trial on his amended application.

The State answered on November 7. It asserted that *Coy v. Iowa* was inapplicable to Morgan's conviction because Morgan's case was not pending before the Supreme Court when *Coy v. Iowa* was decided. The State also asserted that even if *Coy v. Iowa* applied and the child's testimony was excluded, there was sufficient remaining evidence to sustain Morgan's conviction.

Judge Carl E. Peterson heard the summary disposition application on November 7 and denied it on December 28. The judge

decided that *Coy v. Iowa* should not be applied retroactively to Morgan's conviction.

On April 4, 1989, Morgan made application for leave to amend, which was granted several weeks later. In this amendment Morgan more fully stated his claim of ineffective assistance of appellate counsel. He asserted that Burns was ineffective for

> failing to file a request for direct review or certiorari to the United States Supreme Court from the Iowa Court of Appeals' and the Iowa Supreme Court's decisions affirming Morgan's conviction at trial, or in not advising Morgan to do likewise while *Coy v. Iowa* was pending before the United States Supreme Court.

Judge J.W. Frye heard the postconviction action in June and ruled against Morgan on the retroactive application and the ineffective assistance claims. Judge Frye also held that even if *Coy v. Iowa* applied, there was sufficient remaining evidence to satisfy the harmless error standard. *See Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967).

Morgan appealed. He raises a number of issues on appeal that boil down to two: (1) whether *Coy v. Iowa* applies retroactively to his conviction; and (2) whether Burns rendered ineffective assistance of counsel when he did not seek relief in the Supreme Court while *Coy v. Iowa* was pending.

## II. *Retroactive Application of Coy v. Iowa.*

The first issue we address is whether *Coy v. Iowa* applies retroactively to Morgan's conviction. The answer depends on several Supreme Court holdings dealing with retroactive application of constitutional decisions to cases on collateral review.

New constitutional rules of criminal procedure apply retroactively to all cases—state or federal—pending on direct review or not yet final. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987). "Final" refers to all cases in which a judgment of conviction has been rendered, appeals have been exhausted, and the time for petition for certiorari has

elapsed before the new rule is announced. *Teague v. Lane*, 489 U.S. 288, 295, 109 S.Ct. 1060, 1066–67, 103 L.Ed.2d 334, 345–46 (1989).

So, generally, such new rules do not apply retroactively to cases on collateral review. *Id.* at 311–16, 109 S.Ct. at 1075–78, 103 L.Ed.2d at 356–60; *Brewer v. State*, 444 N.W.2d 77, 81 (Iowa 1989). There are two exceptions. New rules are applied to cases on collateral review if the rule change (1) places certain types of individual, private conduct beyond the ability of the lawmakers to proscribe, or (2) creates a "watershed" rule of criminal procedure implicating issues of fundamental trial fairness. *Teague*, 489 U.S. at 311–12, 109 S.Ct. at 1075–76, 103 L.Ed.2d at 356–57; *Brewer*, 444 N.W.2d at 81.

Generally, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349. Stated another way, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349.

If the constitutional decision merely applies settled precedents to new and different factual situations, no real question of retroactive application arises in cases on collateral review. This is because the new decision has not in any way changed the rule of earlier cases. *Yates v. Aiken*, 484 U.S. 211, 216 n. 3, 108 S.Ct. 534, 538 n. 3, 98 L.Ed.2d 546, 554 n. 3 (1988) (quoting *United States v. Johnson*, 457 U.S. 537, 549, 102 S.Ct. 2579, 2586–87, 73 L.Ed.2d 202, 213 (1982)). So the decision has not announced a new rule. In these circumstances the decision applies automatically to all cases—even cases on collateral review.

As to cases on collateral review, "[t]he 'new rule' principle ... validates reasonable, good faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v. McKellar*, 494

U.S. 407, ——, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347, 356 (1990). In short, a state court's reasonable and good faith interpretation of existing precedents is a factor to consider in determining whether a new rule has been established. The reason for the *Butler* holding is obvious: To the extent possible, state court convictions should be upheld. Simply put, *Butler* puts a premium on finality.

### A. The new rule analysis.

In Morgan's case we are dealing with a postconviction challenge to a prior conviction, a case on collateral review. Clearly Morgan's conviction was final when the Supreme Court decided *Coy v. Iowa.* By then Morgan had been convicted, we had denied his application for further review, and the time for certiorari to the Supreme Court had expired. That leads us to the question whether *Coy v. Iowa* announced a new rule.

Morgan relies heavily on the majority's analysis in *Coy v. Iowa* to support his contention that the case did not establish a new rule. The majority maintains that prior Supreme Court precedents establish the sixth amendment had always guaranteed criminal defendants the right to physically face those who testify against them. *See Coy v. Iowa,* 487 U.S. at 1016, 108 S.Ct. at 2800, 101 L.Ed.2d at 864.

The majority stops short of saying that there are no exceptions and expressly leaves open that question. *Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. The State had argued that Iowa Code section 910A.3(1) was necessary to further an important public policy: to protect children who are victims of sexual abuse from the trauma of in-court testimony. The Court rejected this argument because the trial court had held no hearing and had made no individualized findings that these particular witnesses needed protection. *Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867.

Recently, the exception question was squarely presented in a case involving a statutory procedure similar to the one used here. *See Maryland v. Craig,* 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In *Craig,* the defendant was charged and convicted of sexually abusing a six-year-old child. Relying on expert testimony presented by the State, the trial court found that the child would suffer "serious emotional distress such that [she could not] reasonably communicate" if required to testify in the courtroom. Over the defendant's confrontation objection, the trial court allowed the child to testify by one-way closed circuit television outside the defendant's physical presence. Because the trial court had made these individualized findings, the Supreme Court was directly confronted with the question reserved in *Coy v. Iowa.*

The majority in *Craig* observes that there are four components to the confrontation clause. These include physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. *Id.* at ——, 110 S.Ct. at 3163–64, 111 L.Ed.2d at 678–79. Citing to an impressive array of prior Supreme Court decisions, the majority notes that the Court has never held that the confrontation clause guarantees a defendant the absolute right to the first element: physical presence or face-to-face confrontation. *Id.* at ——, 110 S.Ct. at 3162–65, 111 L.Ed.2d at 677–80. What the precedents do establish—the majority points out—is that the confrontation clause reflects a *preference* for face-to-face confrontation at trial. *Id.* at ——, 110 S.Ct. at 3165–66, 111 L.Ed.2d at 681. And face-to-face confrontation may be denied so long as "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at ——, 110 S.Ct. at 3166, 111 L.Ed.2d at 682.

The Court held that protecting a child from the trauma of in-court testimony constitutes the necessary "important public policy" underlying the challenged statutory procedure. *Id.* at ——, 110 S.Ct. at 3169, 111 L.Ed.2d at 682. And the preservation of the other three components in the procedure—oath, cross-examination, and demeanor—assures the reliability of the child's testimony. *Id.* at ——, 110 S.Ct. at 3166, 111 L.Ed.2d at 682.

Did *Coy v. Iowa* announce a new rule? We think so. As the majority in *Craig* points out, several Supreme Court decisions before this case emphasized cross-examination—not face-to-face confrontation—as the essence of confrontation. In addition, as long as cross-examination was available, face-to-face confrontation was not essential. *See, e.g., Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980) ("The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right of cross-examination' "); *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) ("The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination"); *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213, 222 (1970) (confrontation clause does not prohibit introduction of all hearsay evidence); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965) ("an adequate opportunity for cross-examination may satisfy the [confrontation] clause even in the absence of physical confrontation").

*Coy v. Iowa* elevates face-to-face confrontation to the level of cross-examination. This is the essence of the new rule. *Craig* rounds out this new rule. Face-to-face confrontation would continue to be essential except in limited cases and under very stringent requirements.

There is another reason why we think *Coy v. Iowa* announced a new rule. Before *Coy v. Iowa,* we reasonably and in good faith had determined that face-to-face confrontation was not an absolute sixth amendment guarantee.

Before *State v. Coy* we had already faced a similar confrontation challenge. The challenge was to the use of a screen between a sexual abuse victim and the defendant during the victim's testimony. *See State v. Strable,* 313 N.W.2d 497, 500–01 (Iowa 1981). In *Strable,* the defendant argued that the confrontation clause guaranteed his right to face-to-face confrontation

with the victim witness. *Id.* at 500. Rejecting this argument, we said:

> The confrontation clause has two purposes. "The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him,* but for the purpose of cross-examination, which cannot be had except for the direct and personal putting of questions and obtaining immediate answers."

*Id.* (quoting *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) (emphasis added) (in turn citing 5 *J. Wigmore, Evidence* § 1395, at 123 (3d ed. 1940))). In short, cross-examination was essential; face-to-face confrontation was not.

We also decided that the confrontation clause served a second purpose: to allow judge and jury to view the demeanor of the witness. *Id.* at 501. But we concluded that this purpose was dispensable. *Id.*

In *State v. Coy,* we cited a third purpose served by the confrontation clause: insuring that the witness will testify under oath. *Coy,* 397 N.W.2d at 734. The oath, of course, impresses upon the witness the seriousness of the matter and guards against lies through the ever-present threat of prosecution for perjury. *Id.*

It is true that in the past we did not give face-to-face confrontation as much importance as cross-examination. But Morgan receives no benefit from this.

We reach this conclusion because in this collateral review case, the new rule principle validates our previous reasonable, good-faith interpretation that the sixth amendment does not absolutely guarantee face-to-face confrontation. *See Butler,* 494 U.S. at ——, 110 S.Ct. at 1217, 108 L.Ed.2d at 356. This is so even though our past interpretation may have been contrary to a later Supreme Court decision. *See id.* In short, our past interpretation of the face-to-face confrontation issue supports the conclusion that *Coy v. Iowa* established a new rule. As we said, the essence of the new rule is

that face-to-face confrontation has been elevated to the level of cross-examination.

### B. The *Teague* exceptions analysis.

■ We earlier noted that *Teague* recognizes two exceptions to the rubric that new rules do not apply retroactively to collateral review cases. So our remaining task is to determine whether Morgan's case fits either exception. Morgan concedes the first exception does not apply. He argues, however, that the second one does. For reasons that follow, we disagree.

The second exception permits retroactive application of a new rule to collateral review cases when the change creates a "watershed" rule of criminal procedure implicating issues of fundamental trial fairness. *Teague*, 489 U.S. at 310–11, 109 S.Ct. at 1075–76, 103 L.Ed.2d at 356–57; *Brewer*, 444 N.W.2d at 81.

As the State correctly notes, *Teague* recognizes that few constitutional decisions would qualify as "watershed" criminal rules. Such rules would be limited to those the violation of which would "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague*, 489 U.S. at 290, 109 S.Ct. at 1064, 103 L.Ed.2d at 359. So fundamental fairness and accuracy are the hallmarks of watershed rules.

The Court gave examples of what it was talking about:

> We are ... of the view that ["watershed" criminal rules] are "best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus— that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods."

*Id.* at 313, 109 S.Ct. at 1077, 103 L.Ed.2d at 358.

As we said, before *Coy v. Iowa* several Supreme Court decisions emphasized that face-to-face confrontation was not essential for sixth amendment purposes. In addition—as the State correctly notes—an exception to the requirement of face-to-face confrontation underlies every hearsay question in a criminal case.

Given these cases, we can scarcely say that using one-way closed circuit television is on par with obtaining a flawed conviction by mob violence, perjured testimony, or a confession obtained through the use of brute force. Use of the procedure would not—in our view—undermine the fundamental fairness that must underlie a conviction. Nor would it seriously diminish the likelihood of obtaining an accurate conviction. *See Craig*, 497 U.S. at ——, 110 S.Ct. at 3159, 111 L.Ed.2d at 682 (holding that similar procedure "adequately ensures that the testimony [of the child] is both reliable and subject to vigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony").

In sum, we find no error in the district court's refusal to apply *Coy v. Iowa* retroactively to Morgan's conviction.

### III. *Ineffective Assistance of Counsel.*

Burns did not seek certiorari to the United States Supreme Court after we denied Morgan relief on his direct appeal. The second issue we must decide is whether this was ineffective assistance of counsel.

In January 1988 the United States Supreme Court heard arguments in *Coy v. Iowa*. Burns attended these arguments with Papak.

In March the court of appeals affirmed Morgan's conviction. It relied on our decision in *State v. Coy* in deciding the confrontation issue. Burns wrote Morgan about the court of appeals' decision. In that letter Burns told Morgan that the only possible avenue left was to seek further review in our court. Burns asked Morgan to let him know whether Burns should ask for such review. The letter goes on to say:

> The [court of appeals'] ruling on your [confrontation] issue is based entirely on the Iowa Supreme Court opinion in *State v. Coy*, 397 N.W.2d 730 (Iowa 1986). On January 13, 1988 we took the *Coy* case to the United States Supreme Court. If we win *Coy* on confrontation clause

grounds, you may have a strong issue in federal court.

Morgan answered quickly. He told Burns in a letter, "Yes, I want to appeal or whatever can be done."

Burns filed the application for further review, which we denied on April 22. On April 27 Burns wrote Morgan about our denial and told him, "This concludes your direct appeal."

On April 26 Burns closed his file on Morgan's case. The Supreme Court decided *Coy v. Iowa* on June 29, 1988, seven days after Morgan's right to file a petition for certiorari had expired.

At the postconviction hearing, Burns freely admitted he was unfamiliar with the law on retroactive application of constitutional decisions. He also admitted that he did not seriously consider the issue. He never told Morgan that his case would have to be pending before the Supreme Court when it decided *Coy v. Iowa*. Burns apparently believed any favorable ruling in *Coy v. Iowa* would automatically apply to Morgan's conviction. Burns would have been correct if *Coy v. Iowa* had not announced a new rule.

Morgan testified he did not know he could file a petition for certiorari. He felt his only alternative was to file for postconviction relief.

■ Familiar principles govern claims of ineffective assistance of counsel. Because such a claim asserts a constitutional violation, we make an evaluation based on the totality of the circumstances. This is equivalent to a de novo review. *Cuevas v. State*, 415 N.W.2d 630, 632 (Iowa 1987).

■ A convicted person seeking relief on a claim of ineffective assistance of counsel must prove two elements: (1) breach of an essential duty, and (2) prejudice. *State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990). The test for the first element is whether the lawyer's performance was outside the range of normal competency. *Pettes v. State*, 418 N.W.2d 53, 56 (1988). The test for the second element is whether counsel's error affected the outcome of the case. *State v. Bumpus*, 459 N.W.2d 619,

627 (Iowa), *cert. denied*, —— U.S. ——, 111 S.Ct. 563, 112 L.Ed.2d 570 (1990); *see also Strickland v. Washington*, 466 U.S. 668, 695–96, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674, 698–99 (1984).

■ Morgan presents the following argument. Morgan's case had the identical confrontation issue raised in *Coy v. Iowa*. Burns had handled *State v. Coy* in our court. While handling Morgan's appeal, Burns was constantly aware of what was happening in *Coy v. Iowa*. In these circumstances, Burns should have kept abreast of all constitutional decisions that might affect Morgan's case. One of these decisions—*Griffith*—had established a bright line test on retroactive application of newly decided constitutional decisions. According to *Griffith* the holdings of these decisions would apply to all cases pending on direct review or not yet final. To reap the benefits of any favorable decision in *Coy v. Iowa*, Burns had to seek certiorari for Morgan no later than June 22, 1988. In failing to file such a timely certiorari petition, Burns breached an essential duty to Morgan. As a result of that breach, Morgan lost the benefit of automatic application of *Coy v. Iowa* to his conviction.

### A. Breach of essential duty.

As to the first element—breach of essential duty—the State correctly boils the question down to this. Would an appellate attorney of normal competence have filed a petition for certiorari after being denied relief on direct appeal? For reasons that follow, we think not.

As we noted, several Supreme Court decisions before *Coy v. Iowa* focused on cross-examination as the essential element for confrontation purposes. As long as cross-examination was afforded, physical face-to-face confrontation was not essential. In reaching the same conclusion in several cases before *Coy v. Iowa*, we relied on these very decisions.

That was the law when section 910A.14(1) was passed and that was the law when the court of appeals affirmed Morgan's conviction.

We earlier said that *Coy v. Iowa* had articulated a new rule. Had the case not established a new rule, *Coy v. Iowa* would have applied automatically to Morgan's conviction. And Burns would not now be facing a claim of ineffective assistance.

But *Coy v. Iowa* did establish a new rule. So that case would not apply automatically to Morgan's conviction. Burns incorrectly thought it would. As a result, he did not keep Morgan's case alive by seeking relief in the Supreme Court. Does such a mistaken belief amount to ineffective assistance of counsel? Before we can say so, we would have to say Burns should have predicted several things—things that were impossible for him to predict.

First, he should have predicted the outcome of *Coy v. Iowa*.

Second, he should have predicted whether *Coy v. Iowa* would announce a new rule. The unreasonableness of holding Burns to such an impossible duty is highlighted by comparing the majority's analysis in *Coy v. Iowa* with the majority's analysis in *Craig*. In *Coy v. Iowa*, the majority took the position that face-to-face confrontation had always been considered indispensable. In *Craig*, the majority took the opposite position.

Last, Burns should have predicted when *Coy v. Iowa* would be decided so that he could keep Morgan's case alive.

We have never held counsel to a duty of clairvoyance. And we do not do so now. *See Cuevas*, 415 N.W.2d at 633 (counsel not required to predict change in law); *Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) ("Counsel need not be a crystal gazer; it is not necessary to know what the laws will become in the future to provide effective assistance of counsel"); *Hinkle v. State*, 290 N.W.2d 28, 34 (Iowa 1980) (ineffective assistance claim rejected even though counsel failed to object to instruction we rejected in later cases).

To further underscore the unreasonableness of Morgan's claim, we look at Burns' duty in another light. We also guessed wrong on how the Supreme Court would view the face-to-face confrontation issue when we decided *State v. Coy*. Should we now hold Burns to a higher duty than we expect of ourselves?

Taking Morgan's claim to its extreme, we would have to say that counsel should expect the Supreme Court to change its position on every constitutional issue raised on appeal to this court. And if we reject the issue, counsel should always seek relief in the Supreme Court to protect the defendant's right to retroactive application of any subsequent change in the law.

Competent appellate counsel should not and do not operate this way. They raise legitimate issues and ignore frivolous ones. And they are not penalized for adopting this strategy. *See Cuevas*, 415 N.W.2d at 633 ("[M]ost experienced appellate lawyers or judges will attest it is a tactical blunder, often devastating to an appellant, to assign every conceivable complaint. Highly competent lawyers generally assign only the strongest points and rely on them for reversal").

In hindsight, Burns made a mistake. But that mistake falls short of qualifying as a breach of an essential duty.

B. Prejudice.

Morgan also falls short of establishing prejudice. Morgan assumes he suffered prejudice when he lost the retroactive application of *Coy v. Iowa*. Had Morgan been entitled to the benefit of *Coy v. Iowa*, a harmless error analysis would still be necessary. *See Coy*, 487 U.S. at 1021–22, 108 S.Ct. at 2803–04, 101 L.Ed.2d at 867. This analysis would proceed under the standard of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711. *Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. Under the *Chapman* analysis, we can hold error harmless only when we can "declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711; *accord State v. Iowa Dist. Court*, 464 N.W.2d 244, 249 (Iowa 1990); *In re J.D.S.*, 436 N.W.2d 342, 345 (Iowa 1989); *State v. Coy*, 433 N.W.2d 714, 715 (Iowa 1988).

The harmless error analysis would exclude the testimony of the child and be

based on the remaining evidence. *Coy,* 487 U.S. at 1021–22, 108 S.Ct. at 2803–04, 101 L.Ed.2d at 867; *Coy,* 433 N.W.2d at 715. With these principles in mind, we turn to the remaining evidence.

From that evidence the jury could find the following facts. Morgan was with the child for several hours in a motel. He drove her home from the motel. Shortly after, the police took sheets from the motel room. Seminal fluid was found on the sheets, in the child's undergarments, and in her vagina. Blood typing found in all three places showed that Morgan could have produced the fluid. At the time of the incident the child was twelve years old and was not living with Morgan as husband and wife.

Morgan was charged with sexual abuse in the third degree. The elements of this offense include the following:

    1. The defendant performed a sex act with the victim.

    2. The defendant performed the act while the victim was under the age of fourteen.

    3. The defendant and the victim were not then living together as husband and wife.

*See* Iowa Code §§ 709.4, 702.5; Iowa Criminal Jury Instructions 900.3 (June 1988). A sex act includes, among other things, penetration of the penis into the vagina or contact between the genitals of one person and the genitals of another. *See* Iowa Code § 702.17; Iowa Criminal Jury Instructions 900.8 (June 1988).

We think the jury could easily have found that all three elements were proved beyond a reasonable doubt and that Morgan was, therefore, guilty. So any error resulting from the procedure used to take the child's testimony was harmless beyond a reasonable doubt.

The district court correctly found that Morgan had failed to prove his ineffective assistance of counsel claim.

## IV. *Disposition.*

The district court correctly concluded that *Coy v. Iowa* does not apply retroactively to Morgan's conviction. The court also correctly concluded that Morgan had failed to prove his claim of ineffective assistance of counsel. So the court properly denied Morgan relief on these claims.

Finding no error, we affirm.

AFFIRMED.