# IN THE COURT OF APPEALS OF IOWA

No. 17-1653
Filed September 26, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHARLES P. PHIPPS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Poweshiek County, Myron L. Gookin,

Judge.


        The defendant appeals from his conviction for assault while displaying a

dangerous weapon. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.


        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Charles Phipps appeals from his conviction for assault while displaying a dangerous weapon. Phipps maintains (1) the trial court should have granted his motion for judgment of acquittal because assault while displaying a dangerous weapon is a specific-intent crime and the State did not provide substantial evidence regarding his specific intent, (2) trial counsel provided ineffective assistance by failing to challenge the jury instruction that assault with a dangerous weapon is a general-intent crime, and (3) the court abused its discretion in denying his motion for mistrial after a witness's testimony exceeded the minutes of evidence.

**I. Background Facts and Proceedings.**

In May 2017, Phipps was charged by trial information with assault while displaying a dangerous weapon, pursuant to Iowa Code sections 708.1(2)(c) and 708.2(3) (2017). It was alleged Phipps "did assault L.T. by using or displaying a dangerous weapon, to-wit: a Daisy pellet gun, toward her in a threatening manner."

During the jury trial, L.T., who had been a roommate of Phipps in March 2017, testified:

> Well, I was in the living room, and all of a sudden I heard [Phipps] yelling. And he started barreling down the hallway looking for [another roommate's girlfriend], and I told him that she wasn't there. And he had—I can't remember exactly what he was saying, but he was talking about how [the girlfriend]—nobody likes her, and, you know, he's going to kill her. And—

The defense objected and, outside of the presence of the jury, moved for a mistrial, arguing L.T.'s testimony Phipps stated he was going to kill the girlfriend was beyond the minutes of evidence. The State conceded that nobody was aware L.T.

would testify to that effect. The court considered Iowa Rule of Criminal Procedure 2.5(3) and ruled the testimony was outside of the provided minutes. However, the court denied the motion for mistrial, deciding instead to inform the jury that the testimony in question was stricken from the record and was not to be considered as part of its deliberation.

L.T.'s testimony continued:

> And so I looked around the corner, and he looked at me and said, "Friend or foe?" And I said, "Yeah, she's my friend." And then that's when he pointed the gun at me and then I just, I mean, I didn't know what do so—I just—and then shortly after that, [another roommate] had woken up and then [Phipps] had went to his room.

L.T. testified she "was a little scared," "but I didn't think that he would hurt me. But at that moment in time, I honestly wasn't completely for sure if he would."

At the close of the State's evidence, Phipps moved for a judgment of acquittal, arguing "the State has failed, with competent evidence, to be able to prove an intent, the specific intent required to meet the definition of the elements of the crime of assault."

The court denied the motion, stating in part:

> [T]he court is not convinced that this is a specific intent crime. The court believes that what has been charged is a general intent crimes, and so at this point in time, as far as I'm aware the *Fountain* case,[1] which deals with finding that [section] 708.1(2)(a) [and] (b) require specific intent. I do not believe the supreme court has addressed subparagraph (c).

The jury convicted Phipps as charged. He was later sentenced to an indeterminate two-year term of incarceration.

Phipps appeals.

---

[1] *State v. Fountain*, 786 N.W.2d 260 (Iowa 2010).

## II. Discussion.

### A. Sufficiency of the Evidence.

Phipps maintains the district court should have granted his motion for judgment of acquittal because assault while displaying a dangerous weapon is a specific-intent crime and the State did not provide substantial evidence to support a finding of specific intent. The specific intent to which Phipps addresses his argument comes from the definition of a dangerous weapon. The court instructed the jury:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicted death. It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

The State proceeded under the second definition of dangerous weapon and so was required to prove Phipps used the pellet gun in "in such a way as to indicate [he] intended to inflict death or serious injury."

The State responds that we are precluded from considering whether substantial evidence supports a finding of specific intent because the jury was instructed that assault while displaying a dangerous weapon is a crime of general intent and Phipps did not object to that instruction.

We agree with the State. Phipps did not object to the instruction informing the jury that the only specific-intent crime among the charges was the lesser-included offense of simple assault. "Therefore, the jury instructions became the law of the case for purposes of our review of the record for sufficiency of the evidence." *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). Although Phipps

raised the issue of sufficiency of the evidence on intent in his motion for judgment of acquittal,[2] he failed to object to the court's instruction directing the jury to consider the charge as a general-intent crime. Because Phipps's only sufficiency-of-the-evidence argument is at odds with the law of the case, we do not consider it further.

### B. Ineffective Assistance.

Alternatively, Phipps maintains trial counsel provided ineffective assistance by failing to challenge the jury instruction that assault while displaying a dangerous weapon is a general intent crime. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (stating "[s]uch "claims are an exception to normal error-preservation rules and the 'law of the case' doctrine").

We review claims of ineffective assistance de novo. *Id.* at 783. To prove his claim, Phipps bears the burden to show by a preponderance of the evidence that his trial counsel failed to perform an essential duty and prejudice resulted. *Id.* at 784. His claim fails if either element is lacking. *Id.*

Phipps maintains counsel had a duty to object to the instructions informing the jury that assault while displaying a dangerous weapon is a general-intent crime, but he concedes our supreme court has not yet addressed whether the theory of assault upon which the State relied is one requiring general or specific intent. In a published opinion, this court has acknowledged assault under section 708.1(2)(c)

---

[2] We need not determine whether Phipps's argument for judgment of acquittal was made with enough specificity to preserve this argument for appeal, *see State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004), because even if it was, his failure to object to the jury instruction advising the jury that assault while displaying a dangerous weapon is a general-intent crime now prevents him from challenging whether there was substantial evidence to find specific intent. S*ee Canal*, 773 N.W.2d at 530 (providing we review the sufficiency of the evidence in the light of the jury instructions given).

(providing a person commits assault when displaying in a threatening manner any dangerous weapon toward another) has not been found to be a specific intent crime. *See State v. Beck*, 854 N.W.2d 56, 66 (Iowa Ct. App. 2014) (holding 2002 amendment to assault statute expressly stating it was "general intent" crime had "continued effect" because it applied to third alternative means of commission); *see also State v. Meek*, No. 16-0797, 2017 WL 706334, at *5 (Iowa Ct. App. Feb. 22, 2017).

Phipps has not established counsel had an essential duty to advocate for this change in law. *See State v. Liddell*, 672 N.W.2d 805, 814 (Iowa 2003) ("Under the law in effect at the time, it would be patently unfair to adjudge [the defendant's] counsel ineffective for failing to foresee today's decision, which diverges from precedent."). Phipps bears the burden to establish counsel's conduct "was outside the range of normal competency," *see Morgan v. State*, 469 N.W.2d 419, 426 (Iowa 1991), and he has not done so. "We have never held counsel to the duty of clairvoyance. And we do not do so now." *Id.*

Nor has Phipps shown prejudice resulted from counsel's failure to object to the court's instructions on general intent. The jury was instructed that the State had to prove the pellet gun was a dangerous weapon under the definition that the weapon "is used in such a way as to indicate the user intended to inflict death or serious injury." This instruction allowed Phipps to argue the evidence or lack of evidence of his intent as part of his defense to the charge.

Because Phipps has not met his burden of establishing the elements of ineffective assistance, his claims fails.

**C. Motion for Mistrial.**

Phipps maintains the trial court should have granted his motion for mistrial after L.T. testified Phipps stated he was going to kill the girlfriend—testimony the State conceded was not included in the minutes of evidence.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017). "A mistrial is appropriate when an impartial verdict cannot be reached or the verdict would have to be reversed on appeal due to an obvious procedural error in the trial." *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006) (altered for readability).

Iowa Rule of Criminal Procedure 2.5(3) provides:

> The prosecuting attorney shall, at the time of filing such information, also file the minutes of evidence of the witnesses which shall consist of a notice in writing stating the name and occupation of each witness upon whose expected testimony the information is based, and a full and fair statement of the witness' expected testimony.

Rule 2.5(3) requires the State to file minutes of evidence that provide "a full and fair statement of [each] witness' expected testimony." "The minutes need not list each detail to which a witness will testify, but they must provide defendant with a full and fair statement sufficient to alert him to the source and nature of the information against him." *State v. Ellis*, 350 N.W.2d 178, 181 (Iowa 1984). Whether testimony is within the scope of the minutes must be decided on a case by case basis. *Id.* The purpose of the rule is to eliminate claims of foul play and provide meaningful minutes from which a defense can be prepared. *State v. Ristau*, 340 N.W.2d 273, 274 (Iowa 1983).

Phipps maintains his case is similar to *State v. Walker*, 281 N.W.2d 612, 614–16 (Iowa 1979), in which our supreme court reversed for a new trial because a witness was allowed to testify beyond the scope of the minutes of evidence. In *Walker*, the minutes of evidence stated the witness in question would testify he saw the defendant with another man looking at the tires that were later stolen from the building. 281 N.W.2d at 614. During trial, the witness testified to that information and provided additional testimony "concerning the business records of the company in order to establish there was no receipt or other evidence of sale." *Id.* "The purpose of this testimony was to negate any notion that defendant purchased the tires. The State admitted this evidence was necessary to show that there had been a theft a not a sale." *Id.*

Here, the minutes advised L.T. would testify "[t]hat on March 22, 2017, she and the defendant, who were residing together with other individuals at [specific address], got in a verbal argument. That the defendant became upset with her and pointed a pellet gun at her. That she called the police." Additionally, the minutes stated L.T. would testify in accord with the statement she submitted to the police on the day of the incident, which was attached to the minutes. The statement provides:

> Phipps turned up his radio and came storming out of his bedroom and walked down the hallway looking for [the girlfriend], who hasn't even been here, and he was wanting this girl gone and as he was walking back down the hallway yelling and screaming about how this girl needed to get out of his house, which isn't his house, I stopped him and told him that he needed to calm down and asked him to just go back to his room and that's when I noticed that he had a pellet gun in his hand, so I told him he need[ed] to put it away. He proceeded to go on about [the girlfriend] and then he said that nobody likes her and then looked at me and asked if I like her and I said, "Yes, she's my friend." That's when he pointed the gun at me

and called me a traitor and then asked me, "So what are you, friend or foe?" And that's when my friend [other roommate] woke up and came down the hallway asking what was going on. That's when [Phipps] stomped to his room mumbling stuff and then slammed his door.

The Stated conceded at Phipps's trial that L.T.'s testimony that Phipps stated he was going to kill the girlfriend was not in the minutes.

While the specific statement to which L.T. testified was not included in the minutes, the challenged statement was consistent with the overall nature of the minutes of L.T.'s testimony that Phipps was yelling and screaming about disliking the girlfriend and wanting her out of the house while also carrying a pellet gun with him. *See Ellis*, 350 N.W.2d at 182; *see also Ristau*, 340 N.W.2d at 274. Additionally, the minutes established L.T. would testify Phipps pointed the gun at her as a response to her standing up for the girlfriend. *Id.* The minutes did not, however, fairly provide notice the witness would testify Phipps intended to kill the girlfriend—a substantial addition significant to the definition of a dangerous weapon.

Although the testimony went beyond the scope of the minutes of evidence, we cannot say the district court abused its discretion in denying the motion for mistrial. As we already stated, "A mistrial is appropriate when an impartial verdict cannot be reached or the verdict would have to be reversed on appeal due to an obvious procedural error in the trial." *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). Here, insofar as there was procedural error, the district court cured it by striking the challenged testimony from the record. And there is no evidence Phipps did not receive an impartial verdict, as the court instructed the jury the statement was not to be considered as part of their deliberation. *See Ondayog*, 722 N.W.2d

at 785 n.2 ("A jury is presumed to follow the instructions of the court. There is no evidence indicating the jury did not follow the court's instructions in this case.").

We agree with the district court's decision to deny the motion for mistrial.

**III. Conclusion.**

Because Phipps failed to object to the jury instructions, his sufficiency-of-the-evidence argument is at odds with the law of the case, and we decline to consider it. His argument he received ineffective assistance from trial counsel fails, as he has not established trial counsel breached an essential duty. And we cannot say the district court abused its discretion when it denied Phipps's motion for mistrial but struck from the record testimony Phipps challenged as outside of the minutes and instructed the jury not to consider that testimony. We affirm.

**AFFIRMED.**